CORNWELL PERSONNEL ASSOCIATES, LTD., Plaintiff-Respondent, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, Defendant-Appellant: TRUSZYNSKI, Defendant.

Court of Appeals

*No. 78–044. Submitted on briefs January 2, 1979.—*
*Decided September 25, 1979.*
(Also reported in 284 N.W.2d 706.)

For the defendant-appellant the cause was submitted on the brief of *Uclair W. Brandt,* director, and *Barry M. Levenson,* attorney, Job Service Division.

For the plaintiff-respondent the cause was submitted on the brief of *Gerard J. Flood* of Elm Grove.

Before Gartzke, J.J., Bablitch, J. and Dykman, J.

BABLITCH, J. This is an appeal by the Department of Industry, Labor and Human Relations (department) from a judgment of the circuit court for Dane County, reversing the department's finding that John Truszynski (claimant) was entitled to unemployment compensation benefits. The action was commenced in the circuit court by Cornwell Personnel Associates, Ltd. (Cornwell) for review of the department's finding.

Cornwell, a former employer of the claimant, successfully asserted before the trial court that the commission erroneously ignored the purely hearsay testimony it had offered to prove that the claimant had quit his job. The trial court found that the testimony fell within an "admissions against interests" exception to the hearsay rule. Cornwell asserts on appeal the testimony also falls within the "business records" exception set forth in sec. 908.03 (6), Stats.

The dispositive issue on appeal is whether Cornwell, whose unemployment reserve account was wholly unaffected by the department's determination, had standing to commence this action for review. As we hold that it did not, we do not reach the issue concerning the competency of the evidence before the department.

The claimant was employed by the Bucyrus-Erie Co. in Milwaukee for 39 weeks ending May 10, 1976. He successfully established a claim against the unemployment reserve account of that employer and drew 19 benefit checks in the amount of $99 each on the basis of that claim. While he was collecting these benefits, claimant began to work part-time for Cornwell. Cornwell is a temporary help placement service. Claimant was employed by it as a general laborer and assigned to work at various locations between July 23, 1976 and September 8, 1976. During that period he earned a total of $261.77, for an average weekly wage of $37.40. He reported all wages earned to the department.

Claimant's last day of work for Cornwell was September 8, 1976, when a current work assignment ended. When claimant's wage reports ceased, the department initiated a routine inquiry to determine why he was no longer receiving wages. As a part of this inquiry, it sent a "Request for Work Record" (form UC–203) to Cornwell.[1] Cornwell returned the form, claiming thereon that claimant had "quit" the employment.

Pursuant to sec. 108.04(7), Stats.,[2] an employee who voluntarily terminates any employment is ineligible for unemployment compensation benefits from any employer until requalifying for such benefits. Therefore, it was necessary for the department to determine whether Cornwell's allegation that claimant had quit was true, in order to determine whether he was still eligible for benefits from the account of his previous employer, Bucyrus-Erie Co. It is undisputed that claimant was ineligible to

[1] *See* sec. 108.08(2), Stats:

The department may require from any or each employer notification of the partial or total unemployment of his employees, within such time, in such form, and in accordance with such rules as the department may prescribe.

*See* also, sec. 108.09(1), Stats., which provides:

*Settlement of benefit claims.* (1) FILING. Claims for benefits shall be filed pursuant to general department rules, either at the public employment office for the district or as the department's rules may otherwise direct. *Each employer duly notified of a benefit claim shall promptly inform the department in writing as to the employe's weekly wages and credit weeks, and of any eligibility question in objection to such claim* together with the reasons therefor. In any case the employe's statement may be taken as to eligibility, weekly wages, and credit weeks. (Emphasis supplied.)

[2] Section 108.04(7)(a), Stats., provides, subject to various exceptions in the remaining subsections of the statute:

(a) If an employe terminates his or her employment with an employing unit, the employe shall be ineligible for any benefits for the week of termination and thereafter until he or she has again been employed within at least 4 weeks and has earned wages of at least $200, except as otherwise provided in this subsection.

receive benefits from the reserve account of Cornwell at all times material to this action, since his average weekly earnings from that company were less than the statutory minimum necessary to support a benefit claim.[3] It is not clear whether Cornwell knew this fact, however, and its brief on this appeal implies that it did not.

On October 14, 1976 a department deputy made an initial, ex parte determination[4] that claimant was not disqualified from benefits by reason of the termination of his employment with Cornwell, finding that the claimant had terminated that employment with "good cause" within the meaning of secs. 108.04(7) (e)[5] and (8) (c)[6], Stats.

Cornwell received notice of the determination and requested a hearing pursuant to sec. 108.09(2r), Stats., which provides in part:

---

[3] Under sec. 108.05(1), 1975 Stats., the claimant's average weekly benefits would have had to be at least $44.01 to establish a claim against Cornwell.

[4] Section 108.09(2) (b), Stats., provides:
A department deputy shall issue determinations whenever necessary to resolve any matters which may bar, suspend, terminate or otherwise affect the employe's eligibility for benefits.

[5] Section 108.04(7) (e), Stats., provides:
Paragraph (a) shall not apply if the department determines that the employe accepted work which the employe could have refused with good cause under sub. (8) and terminated such employment with the same good cause and within the first 10 weeks after starting work.

[6] Section 108.04(8) (c), Stats., provides:
An employe shall have good cause under par. (a) or (b) if the department determines that the failure related to work at a lower grade of skill or significantly lower rate of pay than applied to the employe on one or more recent jobs, and that the employe had not yet had a reasonable opportunity, in view of labor market conditions and the employe's degree of skill, but not to exceed 6 weeks after the employe became unemployed, to seek a new job substantially in line with the employe's prior job skill and rate of pay.

*Any party to a determination* may request a hearing as to any matter in that determination. (Emphasis supplied.)

A hearing was held before a department examiner, sitting as an appeal tribunal, on November 10, 1976. The claimant did not appear at the hearing. Cornwell appeared without an attorney by its president, David Cornwell, who was the only witness to testify. He stated that the claimant's last work assignment as a general laborer had ended on September 8, 1976, but that on September 13, 1976 a person from the Cornwell office staff named Patty Tesch had called the claimant to reassign him to work. He testified that the claimant had told Tesch he couldn't return to work on that day because he had to take his girlfriend to the dentist. Cornwell also testified as to the subsequent conversations between Tesch and the claimant during which the claimant was reported to have refused to work because he lacked transportation. Based upon this hearsay testimony, the appeal tribunal issued a decision reversing the initial determination, suspending claimant's eligibility for benefits, and requiring him to repay $198 in previously paid benefits.

The claimant petitioned for a review by the Labor & Industry Review Commission pursuant to sec. 108.09 (6) (b), Stats.[7] On August 17, 1977 the commission reversed the appeal tribunal on the ground that no competent evidence had been adduced by Cornwell to satisfy its burden of proving that the employee had quit.

Cornwell commenced this action in circuit court for review of the commission's action pursuant to sec. 108.09 (7) (a), Stats., which provides:

---

[7] Section 108.09 (6) (b), Stats., provides in relevant part:

*Any party* may petition the commission for review of an appeal tribunal decision. . . . Promptly after the receipt of a petition, the commission . . . may affirm, reverse, change, or set aside the appeal tribunal decision, on the basis of the evidence previously submitted . . . or it may order the taking of additional evidence as to such matters as it may direct and thereafter make its findings and decision.

JUDICIAL REVIEW. (a) *Either party may commence judicial action* for the review of a decision of the commission under this chapter after exhausting the remedies provided under this section if the party has commenced such judicial action *in accordance with s. 102.23* within 30 days after a decision of the commission is mailed to a party's last-known address. (Emphasis supplied.)

The department moved to dismiss the action, alleging that Cornwell lacked standing to seek judicial review, because it was not an "aggrieved party" within the meaning of sec. 102.23, Stats. The circuit court denied the department's motion on October 17, 1977, indicating that it would allow the parties to brief the issue of standing for future determination. However, on March 20, 1978 the court issued Directions for Judgment, indicating that it had previously disposed of that issue, and finding that the evidence before the appeal tribunal was sufficient to support its finding that the claimant had quit his employment with Cornwell. It consequently reversed the commission's determination that he was eligible for benefits.

The Unemployment Compensation Act does not contain separately stated provisions governing judicial review of commission decisions. Rather, it incorporates the review provisions of the Worker's Compensation Act set forth in sec. 102.23, Stats.

The issue on appeal turns in part on the disparity between the language of sec. 108.09 (7) (a), Stats., quoted above, which allows "either party" to commence an action "in accordance with sec. 102.23," and that of sec. 102.23 (1), which provides in part:

Within 30 days from the date of an order or award made by the commission . . . *any party aggrieved thereby* may . . . commence, in circuit court, an action against the department for the review of the order or award, in which action the adverse party shall also be made a defendant. (Emphasis supplied.)

Neither the department nor Cornwell addresses the question whether Cornwell was a "party" within the meaning of sec. 108.09(7)(a). We assume for purposes of this appeal, without so holding, that it was.[8]

Cornwell appears to concede that the "party aggrieved" language of sec. 102.23(1) limits the "either party" language of sec. 108.09(7)(a) so as to permit judicial review of commission decisions in unemployment compensation cases only when brought by an "aggrieved party" within the meaning of the Worker's Compensation Act. We believe this concession to be required by the holding of *Boynton Cab Co. v. Giese,* 237 Wis. 237, 249, 296 N.W. 630, 635 (1941), which held that "the nature and scope of the judicial review under [the unemployment compensation laws] is intended to be substantially the same as under sec. 102.23."

The issue on this appeal is therefore whether Cornwell is a "party aggrieved" within the meaning of sec. 102.23 (1), Stats. Cornwell contends that it is such a party, despite the fact that its unemployment reserve account was not affected by the commission's decision. It asserts that it has an interest as a contributor to the unemployment compensation fund in assuring the proper administration of that fund. It argues that if ineligible employees are allowed to obtain benefits, all employers will eventually be required to contribute more than at present to sustain the benefits. It also contends that the department, by failing to inform it that its own unemployment reserve account was not in jeopardy in these proceedings, is estopped from raising its lack of standing to seek judicial review. We reject these contentions.

---

[8] It could be argued that Cornwell was not a "party" within the meaning of sec. 108.09(7)(a), Stats., but that it was merely an employer from whom the department was entitled to solicit information pursuant to secs. 108.08(2) and 108.09(1), n. 1 *supra.* As this issue was not raised, we do not examine it.

While neither ch. 108 (Unemployment Compensation Act) nor ch. 102 (Worker's Compensation Act) define "aggrieved party," sec. 227.01(8) of the Administrative Procedure Act, which is applicable to both chapters pursuant to sec. 227.22(2),[9] defines the term as follows:

A "person aggrieved" includes any person or agency whose *substantial interests* are adversely affected by a determination of an agency. (Emphasis supplied.)

The Wisconsin Supreme Court construed this language to impose a standing requirement similar to the federal rule in *Wisconsin's Environmental Decade, Inc. v. PSC*, 69 Wis.2d 1, 10, 230 N.W.2d 243, 248 (1975):

The first step under the Wisconsin rule is to ascertain whether the decision of the agency directly causes injury to the interest of the petitioner. The second step is to determine whether the interest asserted is recognized by law. This approach is similar to the two-pronged standing analysis outlined by the United States Supreme Court in *Data Processing Service v. Camp* [397 U.S. 150 (1970)] and *Barlow v. Collins* [397 U.S. 159 (1970)] as follows: (1) Does the challenged action cause the petitioner *injury in fact?* and (2) Is the interest allegedly injured arguably *within the zone of interests to be protected* or regulated by the statute or constitutional guarantee in question? (Emphasis supplied.)

Cornwell does not and cannot allege any "injury in fact" to its "substantial interests" from the commission's decision. Its account was immune from liability at the time the decision was made. Its interest in seeking that the act is properly administered and that persons not qualified for benefits do not receive them by inadvertence

[9] Section 227.22(2), Stats., provides:

Only the provisions of ss. 227.01 to 227.21 relative to rules are applicable to matters arising out of s. 56.07(7), 56.21, 66.191 or 101.22 or ch. 102, 108 or 949.

or dishonesty, which is shared in common with all employers subject to the Unemployment Compensation Act, is far more remote than the interests at stake in *Wisconsin's Environmental Decade, supra.* In that case the complaint alleged a direct harm to the environment which would occur from the Public Service Commission's actions, though the injury would be "remote in time." 69 Wis.2d at 14, 230 N.W.2d at 250. In this case Cornwell merely asserts the possibility that if persons wrongfully receive benefits, all employers may eventually be required to contribute more to the reserve funds. Its claim is purely speculative. Courts are not the proper forum for citizens to "air generalized grievances" about the administration of a governmental agency. *Flast v. Cohen*, 392 U.S. 83, 106 (1968); *Frothingham v. Mellon*, 262 U.S. 447, 486–89 (1923). *See also, Manufacturers Ass'n. v. Administrator, Unemp. C. Act*, 25 Conn. Sup. 108, 125 A.2d 317 (1956), *Winchester Repeating Arms Co. v. Radcliffe*, 134 Conn. 164, 56 A.2d 1 (1947).

Cornwell asserts that if it is not allowed standing in this action, no other employer will be able to contest the commission's allegedly wrongful decision. That may be true. It is apparent from the record that the true employer-interest, Bucyrus-Erie, was not notified of any of the hearings or proceedings within the department, despite the fact that its reserve account was the only one affected by any of those proceedings. While we cannot condone a system which does not inform a party in interest of proceedings affecting that interest, the department's failure in this regard does not convert Cornwell's participations in the proceedings into standing to seek judicial review.

The trial court apparently concluded that if Cornwell had standing before the department, it must necessarily

have standing to seek judicial review under the statute. The rules governing standing before an administrative agency are not necessarily the same as the rules governing standing to seek judicial review. *See* Davis, *Administrative Law Treatise* sec. 22.08 at 239 (1958). This contention was rejected in *I.T.O. Corp. of Baltimore v. Benefits R. Bd., etc.,* 542 F.2d 903, 908 (4th Cir. 1976). We cannot agree with Cornwell's argument, and the trial court's implicit conclusion, that an administrative agency can by inadvertence confer standing on a party appearing before it to seek judicial review of its determinations, where those determinations do not inflict actual injury on its interests. *See Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26 (1976); *Sierra Club v. Morton,* 405 U.S. 727 (1972); *see generally,* Davis, *Administrative Law of the Seventies* sec. 22.00–22.02–10 at 485–509 (1976). Standing is not a matter of equitable estoppel between parties. It is rather a prerequisite, defined in this case by statute, that the party commencing an action for judicial review be a "party aggrieved" by the administrative action.

We hold that an employer whose account is not affected by the commission's determination that an employee is eligible for benefits is not a party aggrieved within the meaning of ch. 227, Stats., and is consequently without standing to seek judicial review.

*By the Court.*—Judgment reversed and cause remanded with instructions to dismiss the complaint.