Jerald H. SCHULTZ, Petitioner-Appellant,

v.

INDUSTRIAL COILS, INC., Leo A. Daly, Robert Kieffer, James Kieffer, and Art Kleefisch, Defendants-Respondents.

Court of Appeals

*No. 83–1720. Submitted on briefs July 17, 1985.—
Decided July 18, 1985.*
(Also reported in 373 N.W.2d 74.)

For the petitioner-appellant the cause was submitted on the briefs of *Douglas W. Kammer* and *Douglas W. Kammer, S.C.* of Portage.

For the defendants-respondents the cause was submitted on the brief of *James C. Bohl* and *Quale, Hartmann, Bohl & Evenson* of Baraboo.

Before Gartzke, P.J., Dykman, and Eich, JJ.

EICH, J. Jerald Schultz appeals from a summary judgment dismissing his action against Industrial Coils, Inc., and several of its officers for wrongfully terminating his employment. The sole issue is whether his discharge was wrongful—that is, whether it was contrary to fundamental and well-defined public policy under *Brockmeyer v. Dun & Bradstreet*, 113 Wis. 2d 561, 335 N.W.2d 834 (1983). Because we conclude that it was not, we affirm.

In reviewing summary judgments, we employ the same analysis as the trial court. *Wright v. Hasley*, 86 Wis. 2d 572, 579, 273 N.W.2d 319, 322–23 (1979). We first examine the complaint to determine whether a claim has been stated and then the answer to ascertain whether it presents a material issue of fact. If they do, we then examine the moving party's affidavits to determine whether a *prima facie* case for summary judgment has been made—in this case a defense which would defeat the plaintiff's claim. If it has, we look to the opposing party's affidavits to determine whether any material facts are in dispute which would entitle the opposing party to a trial. *Grams v. Boss*, 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476–77 (1980). If there is no genuine issue of fact, we proceed to decide whether the moving party is entitled to judgment as a matter of law. Sec. 802.08(2), Stats.

Schultz was an employee at Industrial Coils' Baraboo plant. In 1982 he wrote a lengthy letter to the editor of the local newspaper which was highly critical of the company and several of its officers. The letter was published and, as a result, Schultz was fired. Schultz's complaint alleges that his discharge was wrongful because (among other things) it was grounded solely upon his exercise of free expression and thus directly contravened the "express public policy of Wisconsin." Industrial Coils' answer admitted that Schultz was dis-

charged because of the letter but denied that the discharge was in any way violative of public policy or was otherwise wrongful. Industrial Coils also alleged that the Schultz letter was insubordinate and detrimental to the company's interests and that his termination was the result of a "valid business judgment."

The complaint, read liberally, states a claim under *Brockmeyer*, and the answer joins the issue. Industrial Coils filed several affidavits in support of its motion for summary judgment. They set forth, among other things, the content of Schultz's letter to the editor and the reasons why, as a result of the letter, the decision was made to terminate his employment. The affidavits, which will be discussed in more detail below, state a *prima facie* defense, and Schultz filed no affidavits or other proof in opposition. The material facts are not in dispute, and we proceed to consider the legal issues.

Schultz was an employee-at-will; he had no contract of employment with Industrial Coils. Traditionally, in the absence of contrary statutory or contractual provisions, an employer could discharge an employee-at-will for any reason—or for no reason at all—without incurring any liability. *Yanta v. Montgomery Ward & Co., Inc.*, 66 Wis. 2d 53, 63 n. 16, 224 N.W.2d 389, 394 n. 16 (1974). In *Brockmeyer*, the supreme court carved out a narrow exception to the traditional rule: "we hold that an employee has a cause of action for wrongful discharge when the discharge is contrary to a fundamental and well-defined public policy as evidenced by existing law." *Id.*, 113 Wis. 2d at 573, 335 N.W.2d at 840. While the court recognized that the public policy of the state is generally declared in its constitution and statutes, it warned that the concept is both broad and vague, stating:

Given the vagueness of the concept of public policy, it is necessary that we be more precise about the con-

tours of the public policy exception. A wrongful discharge is actionable when the termination clearly contravenes the public welfare and gravely violates paramount requirements of public interest. The public policy must be evidenced by a constitutional or statutory provision.

*Brockmeyer,* 113 Wis. 2d at 573, 335 N.W.2d at 840. The court emphasized the limited nature of the exception, citing "terminations that effectuate an unlawful end" —such as firing an employee for refusal to break the law—as examples of the type of employer conduct which could lead to liability under the rule. *Ibid.* Finally, the court held that the employee has the burden of proving that the dismissal "violates a clear mandate of public policy"; he or she must establish that the conduct causing the discharge was consistent with a "clear and compelling public policy . . ." *Id.* at 574, 335 N.W.2d at 840–41.

Schultz contends that his discharge was contrary to the fundamental public policy of Wisconsin as expressed in art. I, sec. 3, of the Wisconsin Constitution, which provides in part that: "Every person may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right, . . ." Schultz argues at length that this language, in contrast to that found in the First Amendment to the Constitution of the United States, does not impose any "state action" requirement—that his "free speech" rights under the Wisconsin Constitution are protected from private, as well as governmental, interference. We need not reach that question, however. Our task under *Brockmeyer* is not to determine the existence of a specific right possessed by the fired individual—or its invasion; rather, we are to determine whether the discharge implicates a fundamental, well-defined and compelling public policy to such a degree that it cannot be condoned.

In *Brockmeyer,* the employee was fired because of the employer's concern that his truthful testimony at a hearing on another employee's sex discrimination claim would be detrimental to the interests of the company. The court held that while the employer's action may have been indicative of bad faith, the firing did not violate any clearly defined mandate of public policy. We reach a similar conclusion here.

Schultz was fired because he published derogatory remarks about his employer, and the question is whether, because those remarks were intermingled with comment on a public issue, the public policy favoring free expression as expressed in the Wisconsin Constitution would be contravened or violated by Schultz's dismissal.

We consider *Connick v. Myers,* 461 U.S. 138 (1983), to be particularly instructive on the question. There, an assistant district attorney who was unhappy over an upcoming transfer distributed a questionnaire to several of her co-workers soliciting their views on several "office matters"—including office morale, the employees' level of confidence in their supervisors and the existence of improper political pressure in the office. She was fired for insubordination and sued the district attorney under the Civil Rights Act, 42 U.S.C. sec. 1983, claiming that her employment was wrongfully terminated in retaliation for the exercise of her constitutionally-protected right of free speech. The Supreme Court, recognizing that at least part of the employee's communication touched on matters of public concern (and thus gave rise to First Amendment considerations), stated that:

[W]hen [an] employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a per-

sonnel decision taken . . . in reaction to the employee's behavior.[1]

*Id.* at 147. The court proceeded to balance these First Amendment interests against the interests of the employer in promoting efficiency, integrity and appropriate discipline in the office and held that: "The limited First Amendment interest involved here does not require that [the employer] tolerate action which he reasonably believed would disrupt the office, undermine his authority, and destroy close working relationships." *Id.* at 154.

Federal courts have long used a "balancing" test in such situations—balancing the interests of the employee as a citizen commenting upon matters of public concern, and the interest of the employer in promoting efficiency in the workplace. *See e.g., Pickering v. Board of Education,* 391 U.S. 563, 568 (1968). While there is no indication in *Brockmeyer* that Wisconsin courts must or should engage in such an exercise, we do consider that where, as here, there is an interest at stake with possible public policy implications, we should scrutinize the reasons for the discharge.

One of the affidavits filed by Industrial Coils in support of its motion for summary judgment was that of its personnel manager. He states that he and other company managers felt that if Schultz were permitted to continue in the company's employ after writing and publishing such a letter, they would be hindered in any attempts to discipline other employees for similar acts of "disloyalty or insubordination," and, as a result, "productivity would [suffer]." The plant foreman described in his affidavit the agitated reaction of other employees

[1] The plaintiff in *Connick* was employed (and fired) by a public agency, not, as here, a private employer. In terms of the rationale of that case, however, the distinction is immaterial.

to the letter and stated his opinion that if Schultz had not been fired for writing it, there would be morale problems and a "loss of respect for management" among the employees at the plant.

Schultz's letter was ostensibly written on a public issue—"the belittling of school teachers" by the Baraboo community—but he took the opportunity to castigate the president of the school board (who was also an officer of Industrial Coils) at great length for the manner in which he and his fellow officers conducted the company's affairs. On the facts of this case, Schultz's interest in the free expression of ideas as evidenced by his letter, like the similar interests of the employee in *Connick*, is limited. *Connick* recognizes that an employer need not tolerate actions which undermine authority or discipline, or are otherwise disruptive of office routine or employment relations, in the name of a limited free speech interest. *Brockmeyer* makes the same point: "Courts should proceed cautiously when making public policy determinations. No employer should be subject to suit merely because a discharged employee's conduct was praiseworthy or because the public may have derived some benefit from it." *Brockmeyer*, at 573–74, 335 N.W.2d at 840. The trial court correctly concluded that Schultz's discharge was not actionable.

In so deciding, we do not hold that interference with an employee's right to freedom of speech or expression may never form the basis for a cause of action. We hold only that, on the facts of this case, the termination of Schultz's employment did not contravene a fundamental and well-defined public policy within the meaning of *Brockmeyer*.

*By the Court.*—Judgment affirmed.

DYKMAN, J. (*dissenting*). The majority concludes that under *Brockmeyer v. Dun & Bradstreet*, 113 Wis.

2d 561, 335 N.W.2d 834 (1983), we need not determine whether Schultz has a private cause of action for violation of his "free speech" rights under art. I, sec. 3 of the Wisconsin Constitution.[1] The majority asserts that Schultz's rights—even if proved—do not implicate "fundamental well-defined and compelling public policy." I do not agree.

The public policies recognized in *Brockmeyer* are reflected in the constitution and statutes of Wisconsin. *Id.* at 578, 335 N.W.2d at 842. *Brockmeyer* also holds that "[t]hese declarations of public policy are inherently incorporated into every employment at will relationship." *Id.* at 573, 335 N.W.2d at 840. Because our state constitution is an expression of fundamental public policy, Schultz's allegations must implicate that policy.

Schultz also argues that, because Wis. Const. art. I, sec. 3 contains no express state action requirement, his "free speech" rights are constitutionally protected from private as well as governmental invasions. No Wisconsin court has confronted this issue directly. However in *State v. Doe*, 78 Wis. 2d 161, 171, 254 N.W.2d 210, 215 (1977), the supreme court said "Certainly, it is the prerogative of the State of Wisconsin to afford greater protection to the liberties of persons within its boundaries under the Wisconsin Constitution than is mandated by the United States Supreme Court under the Fourteenth Amendment." (Citation omitted.)[2] More specifically, the court said in *McCauley v. Tropic of Cancer*, 20 Wis. 2d 134, 139, 121 N.W.2d 545, 548 (1963). "[A]

---

[1] Wis. Const. art. I, sec. 3 reads in part:

Every person may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right, and no laws shall be passed to restrain or abridge the liberty of speech or of the press.

[2] *See also Pruneyard Shopping Center v. Robins,* 447 U.S. 74, 81 (1980), which holds that states may adopt in their own constitutions protections of individual rights more expansive than those embodied in the United States Constitution.

state may permit greater freedom of speech and press than the Fourteenth Amendment would require, although it may not permit less."

Courts of other jurisdictions have interpreted state constitution provisions virtually identical to Wis. Const. art. I, sec. 3 as not requiring state action prerequisite to invocation of "free speech" guarantees. *See Robins v. Pruneyard Shopping Center,* 592 P.2d 341 (Cal. 1979), *aff'd* 447 U.S. 74 (1980) (interpreting Cal. Const. art. I, sec. 2); *State v. Schmid,* 423 A.2d 615 (N.J. 1980) (interpreting N.J. Const. art. I, para. 6); and *Alderwood Assoc. v. Wash. Envir. Council,* 635 P.2d 108 (Wash. 1981) (interpreting Wash. Const. art. I, sec. 5). In each of those cases a constitutional cause of action against private restraints on free speech was identified. We should consider whether we should follow those cases.

Schultz's claim for wrongful discharge is recognizable under *Brockmeyer,* and may be independently actionable under Wis. Const. art. I, sec. 3.[3] I would reverse and remand for further proceedings.

---

[3] The elevation of every dispute involving speech to constitutional status could open Pandora's box. The courts in *Schmid* and *Alderwood Assoc., supra,* attempted to avoid chaos by balancing the free speech interests against the protections accorded private property rights. A similar balancing test would not apply here, however, because *Brockmeyer* neither provides nor suggests such a mechanism. Instead, *Brockmeyer* says that a fundamental public policy interest is always paramount to the private interests of an employer. *Brockmeyer* at 572–73, 335 N.W.2d at 840.