James T. PAWLISCH, Plaintiff-Appellant,

v.

Jonathan B. BARRY, in his capacity as County Executive
for Dane County, Defendant-Respondent.

Court of Appeals

*No. 84–612. Submitted on briefs July 30, 1985.—*
*Decided September 3, 1985.*
(Also reported in 376 N.W.2d 368.)

For the appellant there were briefs by *Scott Teplinsky, Carroll Metzner* and *Bell, Metzner & Gierhart, S.C.*, of Madison.

For the respondent there was a brief by *Glenn L. Henry*, Dane County corporation counsel, and *Judith H. Toole*, assistant corporation counsel.

Before Dean and LaRocque, JJ., and Bruce F. Beilfuss, Reserve Judge.

LAROCQUE, J.   James Pawlisch appeals a judgment dismissing his complaint for reinstatement to the Dane County Board of Health.  He alleges that his removal by Jonathan Barry, the Dane County executive, violates his first amendment rights to free speech.  Because we find that Pawlisch's first amendment rights were properly limited, we affirm the judgment.

Barry brought a motion to dismiss for failure to state a claim.  The trial court originally treated this motion as one for summary judgment and accepted affidavits. *See* sec. 802.06(2), Stats.  In rendering its decision, however, the trial court concluded that the complaint failed to state a claim.  Because Pawlisch's complaint fails to recite the remarks for which he was removed, we assume for purposes of this appeal, without so holding,[1] that it does state a claim, especially when treating all of his facts as admitted and liberally construing the complaint. *See Evans v. Cameron*, 121 Wis. 2d 421, 426, 360 N.W.2d 25, 28 (1985).  We therefore treat this as a summary

---

[1] *Cornwell Personnel Associates, Ltd. v. DILHR*, 92 Wis. 2d 53, 60, 284 N.W.2d 706, 710 (Ct. App. 1979).

judgment review and examine the affidavits to determine whether a defense that would defeat the plaintiff's claim has been made. If one has been made, we look to the opposing party's affidavits to determine whether any material facts are in dispute that would entitle the opposing party to a trial. *Grams v. Boss,* 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476–77 (1980). If there is no genuine issue of fact, we proceed to decide whether the moving party is entitled to judgment as a matter of law. Section 802.08 (2), Stats.

No material facts are in dispute. The following remarks were attributed to Pawlisch during a board of health meeting at which an Acquired Immune Deficiency Syndrome (AIDS) resolution was discussed: "I would rather spend $12 million to change human behavior. Homosexual sex is immoral and unnatural. Even animals know better than to do that. With that kind of behavior, you have to pay the piper." Pawlisch has never denied making these comments. The remarks caused Barry to seriously doubt whether Pawlisch could continue to act on health policies without discriminating against the homosexual community. Barry thereafter demanded Pawlisch's resignation. When Pawlisch refused, Barry removed him from the board of health.

We conclude that Barry is entitled to judgment as a matter of law. The first amendment protects public servants from discharge based on their exercise of freedom of speech. *Branti v. Finkel,* 445 U.S. 507, 515 (1980). The need to ensure, however, that policies the electorate has sanctioned are effectively implemented is an interest of sufficient vital importance to justify curtailing first amendment rights. *See Elrod v. Burns,* 427 U.S. 347, 367 (1976). The burden of proving the existence of these interests is on the government. *Id.* at 362.

The United States Supreme Court has held that in order for the government's interests to justify abridgment of speech, an employee or public servant must occupy a policymaking position. *See Elrod,* 427 U.S. at 367. This distinction between policymaking and nonpolicymaking positions arises out of cases dealing with political patronage positions. For example, in *Elrod,* the Supreme Court held that a newly elected Democratic sheriff could not dismiss Republican employees simply because of party affiliation. Only an employee in a policymaking position could be dismissed, and then only if philosophical harmony were necessary to implement the will of the electorate.

■

Although Pawlisch occupied a nonpartisan position and political patronage is not at issue here, we agree with the circuit court that *Elrod* and its progeny control. The logical distinction between policymaking and nonpolicymaking positions applies equally well to board of health members. If a citizen holds a policymaking position, his speech can be curtailed if the commonality of political beliefs with the county executive is a necessary requirement for the effective performance of the office. *See Branti,* 445 U.S. at 518.

The standard for determining whether a particular position is within the policymaking exception was set forth in *Elrod,* 427 U.S. at 367–68:

No clear line can be drawn between policymaking and nonpolicymaking positions. While nonpolicymaking individuals usually have limited responsibility, that is not to say that one with a number of responsibilities is necessarily in a policymaking position. The nature of the responsibilities is critical. Employee supervisors, for example, may have many responsibilities, but those responsibilities may have only limited and well-defined objectives. An employee with responsibilities that are not well defined or are of broad scope more likely functions

in a policymaking position. In determining whether an employee occupies a policymaking position, consideration should also be given to whether the employee acts as an adviser or formulates plans for the implementation of broad goals.

Functions of a county board of health are established by statute.[2] Counties are authorized to organize health departments to be managed by a board of health. The board appoints the county health officer,[3] prepares the budget for the health department,[4] and has the following additional powers:

authority to enforce such rules and regulations as may be adopted by the department under the laws of the state. It may adopt such rules for its own guidance and for the government of the health department as may be deemed necessary to protect and improve public health, not inconsistent with state law nor with rules and regulations of the department.[5]

Except for appointing the county health officer and preparing an annual budget, the board has no well-defined responsibilities. Rather, the board operates within broad policymaking guidelines, and its only restriction is to remain within state law and department regulations. Given such broad power, we conclude that members of the board fall within the criteria of a policymaking position. Not all policymakers, however, need be silenced. Restrictions should apply only where commonality of political beliefs with the prevailing policymaker, in this case Barry, is required for the effective performance of an office. *See Branti*, 445 U.S. at 518.

[2] Section 140.09, Stats.
[3] Section 140.09 (4), Stats.
[4] Section 140.09 (12), Stats.
[5] Section 140.09 (6), Stats.

We conclude that speech restrictions apply here. The citizenry elected Barry in part because of his beliefs and positions on issues, including county health issues. Barry, in turn, is empowered to select board of health members to implement those policies sanctioned by the electorate. Barry appoints board members subject only to the approval of the county board.[6] In choosing at-large members, the only criteria to guide Barry are that members have a "broad social viewpoint and a serious interest in . . . health protection . . . ."[7] Barry may remove a board of health member at his pleasure.[8] The legislature must have intended Barry to apply his judgment as to which members would reflect his social policy. Pawlisch's remarks, directly related to health policy, are clearly contrary to Barry's policy of nondiscrimination. Because of this conflict, Barry legally dismissed Pawlisch.[9]

In so deciding, we do not hold that interference with a public board member's right to freedom of speech or expression may never form the basis for a cause of action. We hold only that, on the facts of this case, Pawlisch was subject to removal.

*By the Court.*—Judgment affirmed.

---

[6] *See* § 59.032 (2) (c), Stats.

[7] Section 140.09 (3), Stats.

[8] Section 17.10 (6), Stats.

[9] A similar balancing analysis is used in first amendment cases relating to private employment. Courts have recognized that at times, an employer's interest in promoting efficiency, integrity, and appropriate discipline outweighs an employee's right to comment on first amendment matters of personal interest. *Schultz v. Industrial Coils, Inc.*, 125 Wis. 2d 520, 373 N.W.2d 74, slip opinion at page 6 (Wis. Ct. App., 1985).