Angeline Coady, Sharon Johnson, Janice Kask, Sue Lubnow, Patrick Peterson, Lori Peterson, Robert Peterson, Richard Steeves, Stacia Stokes and Richard Kask on behalf of himself and all others similarly situated, Plaintiffs-Respondents,

v.

Cross Country Bank, Inc. and Applied Card Systems, Inc., Defendants-Appellants.†

Court of Appeals

*No. 2005AP2770. Submitted on briefs October 9, 2006. —Decided January 25, 2007.*

2007 WI App 26

(Also reported in 729 N.W.2d 732.)

† Petition to review filed.

423

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Edward J. Heiser, Jr.,*

and *Ross A. Anderson* of *Whyte Hirschboeck Dudek S.C.*, Milwaukee, and of counsel: *Alan S. Kaplinsky, Martin C. Bryce, Jr.*, and *Sally M. Williams* of *Ballard Spahr Andrews & Ingersoll, LLP*, Philadelphia, Pennsylvania.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Stephen E. Meili* and *Sarah N. Mervine* of *Consumer Law Litigation Clinic of the University of Wisconsin Law School*, Madison.

Before Lundsten, P.J., Dykman and Higginbotham, JJ.

¶ 1. LUNDSTEN, P.J. Cross Country Bank and Applied Card Systems (collectively, "Cross Country") appeal the circuit court's order denying their motion to compel arbitration and stay court proceedings.[1] The plaintiffs, individuals who hold credit cards through Cross Country, sued Cross Country and sought to proceed as a class, alleging that Cross Country engaged in illegal debt collection practices in violation of the Wisconsin Consumer Act. Cross Country argues that the circuit court erred in concluding that the arbitration clause in its credit card agreement with the plaintiffs is unconscionable. We agree with the circuit court that the arbitration clause is unconscionable, and therefore affirm the court's order.

## *Background*

¶ 2. Each of the plaintiffs received a credit card and credit card agreement from Cross Country after responding to a direct mail or other solicitation from

---

[1] Cross Country filed a petition for leave to appeal from this non-final order.

Cross Country.[2] Cross Country subsequently "charged off" all of the plaintiffs' accounts except for one plaintiff, who has two active accounts. The unpaid balances that were "charged off" ranged from approximately $690 to $3800.

¶ 3. The credit card agreement that Cross Country provided to the plaintiffs contains a choice of law clause, which reads:

> **Governing Law.** This Agreement and your Account will be governed by, and interpreted under Federal law and the laws of the State of Delaware without reference to principles of conflict of laws. *The legality, enforceability and interpretation of this Agreement and the amounts contracted for, charged and received under this Agreement will be governed by such laws. This Agreement is entered into between you and us in Delaware. We make decisions about granting credit to you from and extend credit to you under this Agreement in Delaware. Federal and Delaware law will also apply to any controversy, Claim or dispute arising from or relating in any way to the subject matter of this Agreement and/or your Account, including, without limitation, statutory, equitable or tort claims.*

---

[2] One of the plaintiffs is the wife of a Cross Country credit card holder and averred that she is not a party to the credit card account or agreement. Because the parties do not make separate arguments with respect to this plaintiff, we will not distinguish her from the other plaintiffs in the remainder of this opinion.

Also, it appears that there are three different versions of the credit card agreement, each of which applies to one or more of the plaintiffs. The parties have not suggested that there are any relevant differences among the versions for purposes of this appeal and, therefore, we make no distinction among the versions.

¶ 4. The credit card agreement also contains a lengthy arbitration clause, which includes provisions requiring that all disputes be arbitrated if either party elects arbitration and that cardholders waive any rights to proceed on a class-wide basis if arbitration is elected. Specifically, the arbitration clause reads:

> **If you or we elect to arbitrate a Claim, you will not have the right to pursue that Claim in court or have a jury decide the Claim . . . .**

> **If you or we elect to arbitrate a Claim: (1) neither you nor anyone else on your behalf can pursue that Claim in court or in an arbitration proceeding on a class-wide or representative basis; and (2) Claims brought by or against one account holder (or joint account holders) may not be brought together with Claims brought by or against any other account holder.**

The arbitration clause contains an additional choice of law provision, which reads:

> **Governing Law.** This Agreement involves interstate commerce and this Arbitration Provision is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq. The arbitrator must follow: (1) the FAA; (2) the substantive law, consistent with the FAA, related to any Claim . . . .

¶ 5. The plaintiffs sued Cross Country, alleging that Cross Country had engaged in illegal debt collection practices, including harassing phone calls that involved abusive, derogatory, or obscene language and, in some instances, threats. The plaintiffs claimed that Cross Country's debt collection practices violated the Wisconsin Consumer Act, and they sought damages,

428

including double damages under the Act for their finance charges.[3]

---

[3] The Wisconsin Consumer Act contains the following provisions:

**427.104 Prohibited practices. (1)** In attempting to collect an alleged debt arising from a consumer credit transaction or other consumer transaction, including a transaction primarily for an agricultural purpose, where there is an agreement to defer payment, a debt collector may not:

. . . .

(b) Threaten criminal prosecution;

. . . .

(d) Initiate or threaten to initiate communication with the customer's employer prior to obtaining final judgment against the customer, except as permitted by statute including specifically s. 422.404 . . .;

(e) Disclose or threaten to disclose to a person other than the customer or the customer's spouse information affecting the customer's reputation . . .;

. . . .

(g) Communicate with the customer or a person related to the customer with such frequency or at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer;

(h) Engage in other conduct which can reasonably be expected to threaten or harass the customer or a person related to the customer;

(i) Use obscene or threatening language in communicating with the customer or a person related to the customer;

(j) Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist;

. . . .

(L) Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt . . . .

¶ 6. Cross Country moved to compel arbitration and stay all proceedings, asserting that the plaintiffs' claims fell within the scope of the arbitration clause in the credit card agreement. The plaintiffs contended that Cross Country's arbitration clause violated the Wisconsin Consumer Act, that the clause was unconscionable, and that the clause was illusory. In addition, the plaintiffs filed an amended complaint, seeking class certification and adding claims that Cross Country's choice of law and arbitration clauses violated the Act. The plaintiffs sought declaratory relief and to permanently enjoin Cross Country from conducting business operations in Wisconsin in violation of the Act and from including terms in its credit card agreements in violation of the Act.

¶ 7. The circuit court concluded that Cross Country's arbitration clause was unconscionable, struck the clause from the parties' credit card agreements, and denied Cross Country's motion. We reference additional facts as needed in the discussion section of this opinion.

## *Discussion*

### *A. Whether Wisconsin Or Delaware Law Applies*

¶ 8. The central issue in this case is whether the arbitration clause in Cross Country's credit card agreement is unconscionable and, therefore, unenforceable. However, this unconscionability issue presents a preliminary inquiry into the applicable law because Cross Country asserts that the circuit court erred by applying

All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

430

Wisconsin law. Cross Country argues that the credit card agreement's choice of law clause requires that Delaware law be applied to the question of whether the arbitration clause is unconscionable. Cross Country further argues that, under Delaware law, there can be no real dispute that its arbitration clause is not unconscionable and is, therefore, enforceable.

¶ 9. This preliminary choice of law inquiry presents a question of law for our *de novo* review. *Drinkwater v. American Family Mut. Ins. Co.*, 2006 WI 56, ¶ 14, 290 Wis. 2d 642, 714 N.W.2d 568. For the reasons that follow, we conclude that Wisconsin law applies.

¶ 10. Cross Country frames its choice of law argument under *Bush v. National School Studios, Inc.*, 139 Wis. 2d 635, 407 N.W.2d 883 (1987). In *Bush*, the supreme court held that parties are generally free to contract for choice of law, although not "at the expense of important public policies of a state whose law would be applicable if the parties['] choice of law provision were disregarded." *Id.* at 642; *see also General Med. Corp. v. Kobs*, 179 Wis. 2d 422, 428, 507 N.W.2d 381 (Ct. App. 1993) ("[P]arties cannot, by contract, override fundamental policies of the state whose law would be applicable absent the choice of law provision.").

¶ 11. Among the laws "likely to embody an important state public policy" are those that "are designed to protect a weaker party against the unfair exercise of superior bargaining power by another party." *Bush*, 139 Wis. 2d at 643. The court in *Bush* disregarded a choice of law clause specifying the application of Minnesota law in order to give effect to the important public policy embodied in the Wisconsin Fair Dealership Law. *Id.* at 644–45. The court's conclusion rested largely on two facts. First, the legislature enacted the Fair Dealership

Law " '[t]o protect dealers against unfair treatment by grantors, who inherently have superior economic power and superior bargaining power in the negotiation of dealerships.' " *Id.* at 644 (quoting Wis. Stat. § 135.025(2)(b)). Second, the Fair Dealership Law expressly states that it cannot " 'be varied by contract or agreement' " and that any such contract or agreement attempting to do so is " 'void and unenforceable to that extent.' " *Bush*, 139 Wis. 2d at 644–45 (quoting § 135.025(3)).

¶ 12. We conclude that the Wisconsin Consumer Act embodies an important state public policy under the logic of *Bush*. The Act is analogous to the Wisconsin Fair Dealership Law in key respects. Like the Fair Dealership Law, the Act is plainly designed to protect a weaker party against the unfair exercise of superior bargaining power by another party. The legislature has expressly stated that the purposes of the Wisconsin Consumer Act include the protection of "customers against unfair, deceptive, false, misleading and unconscionable practices by merchants" and the encouragement of "the development of fair and economically sound consumer practices in consumer transactions." Wis. Stat. § 421.102(2)(b) and (c). Just as the Wisconsin Fair Dealership Law expressly provides that it cannot be varied by contract or agreement and that an attempt at such variation is unenforceable, *see* Wis. Stat. § 135.025(3), the Wisconsin Consumer Act expressly invalidates choice of law clauses specifying that the law of another state will apply, *see* Wis. Stat. § 421.201(10)(a).[4]

¶ 13. Cross Country nonetheless argues that its choice of law clause does not run afoul of the *Bush* rule. Cross Country's argument, so far as we understand it, is

---

[4] Wisconsin Stat. § 421.201(10)(a) provides, in full:

divided into two main sub-arguments. Cross Country first argues that the choice of law clause does not run afoul of the *Bush* rule because Delaware law would apply to the question of the arbitration clause's enforceability even absent the choice of law clause in the credit card agreement. Cross Country's second argument is that the choice of law clause does not violate an important Wisconsin public policy because the clause does not prevent the plaintiffs from asserting claims and seeking remedies under the Wisconsin Consumer Act in arbitration. We reject both arguments.

### 1. Applicable Law Absent The Choice Of Law Clause

¶ 14. We begin this discussion by noting that Cross Country does not meaningfully discuss or apply seemingly applicable choice of law standards recently developed by our supreme court. In particular, our supreme court has explained that, when performing a choice of law analysis, courts first presume that the law of the forum applies unless it " 'becomes clear that nonforum contacts are of the greater significance,' " *State Farm Mutual Automobile Insurance Co. v. Gillette*, 2002 WI 31, ¶ 51, 251 Wis. 2d 561, 641 N.W.2d 662 (citation omitted), or unless the nonforum state's contacts are " 'so obviously limited and minimal that application of that state's law constitutes officious intermeddling,' " *Beloit Liquidating Trust v. Grade*, 2004 WI 39, ¶ 24, 270 Wis. 2d 356, 677 N.W.2d 298 (citation

Except as provided in sub. (9), the following terms of a writing executed by a customer are invalid with respect to consumer transactions, or modifications thereof, to which chs. 421 to 427 apply:

(a) That the law of another state shall apply[.]

omitted); *see also Drinkwater*, 290 Wis. 2d 642, ¶¶ 40–42. Courts may then apply five "choice-influencing" factors. *See Drinkwater*, 290 Wis. 2d 642, ¶¶ 40, 45; *Beloit Liquidating*, 270 Wis. 2d 356, ¶ 25; *Gillette*, 251 Wis. 2d 561, ¶ 53. The five "choice-influencing" factors are: (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law. *Gillette*, 251 Wis. 2d 561, ¶ 53. Cross Country does not attempt to apply these five factors.

¶ 15. Cross Country does argue that Delaware is the state with the "most significant relationship" to the parties' dispute. In this regard, Cross Country relies on two factual assertions. The first is Cross Country's assertion that it extends credit to the plaintiffs "in Delaware." But this assertion is based on faulty logic. Cross Country relies on language in the choice of law clause stating that Cross Country "extend[s] credit to [its customers] under this Agreement *in Delaware*" (emphasis added). Obviously, however, language in the choice of law clause is of no value in assessing what would happen in the absence of the clause.

¶ 16. Cross Country's second factual assertion is that it is a Delaware bank chartered in and organized under the laws of Delaware with its sole place of business in Delaware. This may be true, but there is no apparent reason why this fact shows that Delaware has the "most significant relationship" with the parties' dispute. After all, Cross Country solicited plaintiffs in Wisconsin, it supplies a service used in Wisconsin, and the plaintiffs are Wisconsin residents who brought suit in a Wisconsin forum.

¶ 17. In sum, Cross Country does not persuade us that Delaware law would apply even absent the choice of law clause in the parties' credit card agreement.[5]

## 2. *Wisconsin Public Policy*

¶ 18. Cross Country's second argument is that the choice of law clause does not violate an important Wisconsin public policy because the clause does not prevent the plaintiffs from asserting claims and seeking remedies under the Wisconsin Consumer Act in arbitration. We disagree. As explained below, the choice of law clause precludes the plaintiffs from asserting *any* claims or remedies under Wisconsin law, including those available under the Act, whether in litigation or arbitration.

¶ 19. Cross Country maintains that the choice of law clause pertains only to the legality, enforceability, and interpretation of the parties' agreement and that, under the agreement, the plaintiffs are free to pursue Wisconsin Consumer Act claims and remedies in arbitration. Cross Country focuses on the following language in the clause:

> **Governing Law.** This Agreement and your Account will be governed by, and interpreted under Federal law and the laws of the State of Delaware without reference to principles of conflict of laws. *The legality, enforceability and interpretation of this Agreement* and the amounts contracted for, charged and received under this Agreement *will be governed by such laws.*

---

[5] Cross Country also makes a one-paragraph argument that federal banking law "supports the primacy" of Delaware law in this case. This argument is insufficiently developed, however, so we decline to address it. *See State v. Pettit*, 171 Wis. 2d 627, 646–47, 492 N.W.2d 633 (Ct. App. 1992) (court may decline to address issues on appeal that are inadequately briefed).

435

(Original emphasis omitted; emphasis added.) Cross Country then points to the additional choice of law provision contained in the credit card agreement's arbitration clause. That choice of law provision reads:

> **Governing Law.** This Agreement involves interstate commerce and this Arbitration Provision is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq. The arbitrator must follow: (1) the FAA; (2) *the substantive law, consistent with the FAA, related to any Claim* . . . .

(Emphasis added.)

¶ 20. Cross Country reads the choice of law clause and the additional choice of law provision in the arbitration clause together, to mean that (1) the choice of law clause must control only the legality, enforceability, and interpretation of the credit card agreement's provisions, and (2) the arbitration clause, via the additional choice of law provision, allows the plaintiffs to assert claims and pursue remedies under the Wisconsin Consumer Act, albeit in arbitration. Close examination reveals, however, that the choice of law clause does not permit the assertion of claims and remedies under the Wisconsin Consumer Act.

¶ 21. Cross Country's reading of the choice of law clause takes language in the clause out of context. The clause, in full, reads:

> **Governing Law.** This Agreement and your Account will be governed by, and interpreted under Federal law and the laws of the State of Delaware without reference to principles of conflict of laws. The legality, enforceability and interpretation of this Agreement and the amounts contracted for, charged and received under this Agreement will be governed by such laws. This Agreement is entered into between you and us in Delaware. We make decisions about granting credit to

> you from and extend credit to you under this Agreement in Delaware. *Federal and Delaware law will also apply to any controversy, Claim or dispute arising from or relating in any way to the subject matter of this Agreement and/or your Account, including, without limitation, statutory, equitable or tort claims.*

(Original emphasis omitted; emphasis added.) Cross Country does not explain to our satisfaction how the emphasized language can be squared with its assertion that the choice of law clause pertains only to the legality, enforceability, and interpretation of the parties' agreement.

¶ 22. Without further assistance from Cross Country, the only reasonable construction of the choice of law clause that we have identified is that it works in tandem with the arbitration clause's additional choice of law provision to make Delaware law and federal law the applicable "substantive law ... related to any Claim." Indeed, the arbitration clause effectively incorporates the choice of law clause through its use of the term "Claim," which appears in both clauses. The choice of law clause states that "Federal and Delaware law will ... apply to any controversy, Claim or dispute." And the arbitration clause's additional choice of law provision states that the arbitrator will follow "the substantive law, consistent with the FAA, related to any Claim." "Claim," in turn, is defined broadly as

> any dispute between you and us that arises as a result of or has anything at all to do with: (1) your Account; ... (3) this Agreement; ... or (5) your relationship with us .... It includes disputes relating to constitutional provisions; statutes; ordinances; regulations; court decisions; compliance with the Agreement; and wrongful acts of every type (whether intentional; fraudulent; reckless; or just negligent). It

includes requests for money, for orders requiring you or us to take certain actions . . . and for any other kind of relief.

¶ 23. In short, Cross Country has provided that (1) all "Claims" will be governed by the "substantive law . . . related to any Claim"; (2) defined a "Claim" in a broad fashion to include "any dispute . . . that arises as a result of or has anything at all to do with" a plaintiff's account, the credit card agreement, or a plaintiff's relationship with Cross Country; and (3) Delaware law will apply to any "Claim." Cross Country's reading of the choice of law clause as limited to the legality, enforceability, or interpretation of the agreement is unreasonable.

¶ 24. Therefore, we reject Cross Country's argument that the choice of law clause does not violate an important state public policy. The clause violates an important state public policy as embodied in the Wisconsin Consumer Act because it bars the plaintiffs from asserting any claims or seeking any remedies under the Act, *even in an arbitration*. We will, therefore, disregard the choice of law clause and apply Wisconsin law to the question of whether the arbitration clause in the credit card agreement is unconscionable.

### B. Whether Cross Country's Arbitration Clause Is Unconscionable

¶ 25. Cross Country argues in the alternative that, even if Wisconsin law is applied, the circuit court still erred in concluding that the arbitration clause was unconscionable. This challenge to the circuit court's decision presents a mixed question of law and fact. *Wisconsin Auto Title Loans, Inc. v. Jones*, 2006 WI 53,

¶ 25, 290 Wis. 2d 514, 714 N.W.2d 155. We will not set aside a circuit court's findings of fact unless clearly erroneous. *Id.* Whether the facts found by the circuit court render a contract provision unconscionable is a question of law for our *de novo* review. *Id.* The party seeking to invalidate a contract provision as unconscionable has the burden of proving facts that justify a legal conclusion that the provision is invalid. *Id.*, ¶ 30.

¶ 26. Our unconscionability determination is guided by the following principles:

> Unconscionability is an amorphous concept that evades precise definition. Indeed, it has been said that "[i]t is not possible to define unconscionability. It is not a concept but a determination to be made in light of a variety of factors not unifiable into a formula."

> We have made several attempts at delineating what is meant by unconscionability. The underlying principle that has evolved in such attempts is that "[t]he principle is one of prevention of oppression or unfair surprise and not of disturbance of allocation of risks because of superior bargaining power." Unconscionability has often been described as the absence of meaningful choice on the part of one of the parties, together with contract terms that are unreasonably favorable to the other party.

> A determination of unconscionability requires a mixture of both procedural and substantive unconscionability that is analyzed on a case-by-case basis. The more substantive unconscionability present, the less procedural unconscionability is required, and vice versa. A court will weigh all the elements of unconscionability and may conclude unconscionability exists because of the combined quantum of procedural and substantive unconscionability. "To tip the scales in favor of unconscionability requires a certain quantum

439

of procedural plus a certain quantum of substantive unconscionability."

Determining whether procedural unconscionability exists requires examining factors that bear upon the formation of the contract, that is, whether there was a "real and voluntary meeting of the minds" of the contracting parties. The factors to be considered include, but are not limited to, age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms would have been permitted by the drafting party, and whether there were alternative providers of the subject matter of the contract.

Substantive unconscionability addresses the fairness and reasonableness of the contract provision subject to challenge. Wisconsin courts determine whether a contract provision is substantively unconscionable on a case-by-case basis.

No single, precise definition of substantive unconscionability can be articulated. Substantive unconscionability refers to whether the terms of a contract are unreasonably favorable to the more powerful party. The analysis of substantive unconscionability requires looking at the contract terms and determining whether the terms are "commercially reasonable," that is, whether the terms lie outside the limits of what is reasonable or acceptable. The issue of unconscionability is considered "in the light of the general commercial background and the commercial needs."

*Id.*, ¶¶ 31–36 (footnotes omitted).

¶ 27. We conclude, as did the circuit court, that the arbitration clause is both procedurally and substantively unconscionable.

## 1. *Procedural Unconscionability*

¶ 28. We begin by examining the circuit court's decision and the evidence in light of the factors relevant to procedural unconscionability under *Wisconsin Auto Title*, a case in which the supreme court concluded that an arbitration clause was unconscionable. *See id.*, ¶ 4.

¶ 29. Each of the plaintiffs is over the age of eighteen, and most but not all of them have a high school education.[6] Nothing in the record suggests that any of the plaintiffs have any particular business acumen or experience. At least half of the plaintiffs are unemployed, including four plaintiffs who are not working because of a disability. Of those that are employed, their occupations include bus driver and substitute teacher, foundry worker, billing specialist, and administrative secretary.

¶ 30. The circuit court found that all of the plaintiffs qualified as either "low-income or nearly so" and, as such, were unlikely to turn down one of their few sources of credit based on the inclusion of an arbitration clause, regardless of whether they were aware of the clause. The court further found that not being able to obtain a credit card could have a debilitating impact on the individual plaintiffs.

¶ 31. In addition, the circuit court found that the relative bargaining power between the plaintiffs and Cross Country was grossly disproportionate. The court noted that Cross Country may have as many as 33,000 credit card customers in Wisconsin and that Cross Country did not deny that it is a multimillion dollar national company that has earned over half a billion

---

[6] Two of the plaintiffs have college degrees. At least one of the plaintiffs did not finish high school.

dollars in the previous eight years by marketing credit cards to people with low or poor credit.

¶ 32. It is clear from the form nature of the credit card agreement that Cross Country, not the plaintiffs, drafted the agreement including the arbitration clause. In addition, the plaintiffs averred that no one from Cross Country reviewed any of the terms of the agreement with them, and that no one from Cross Country read or explained the terms of the agreement to them.[7] The record does not reflect whether there were other credit card companies willing to extend credit to the plaintiffs.

¶ 33. Other facts that are present here, and that support a determination of procedural unconscionability under the relevant case law, are that the credit card agreement, including the arbitration clause, was in small print, *see Leasefirst v. Hartford Rexall Drugs, Inc.*, 168 Wis. 2d 83, 90, 483 N.W.2d 585 (Ct. App. 1992); that the plaintiffs did not read or were not aware of the arbitration clause in the credit card agreement, *see id.*; and that the credit card accounts were opened in response to a solicitation from Cross Country, *see First Federal Financial Service, Inc. v. Derrington's Chevron, Inc.*, 230 Wis. 2d 553, 561, 602 N.W.2d 144 (Ct. App. 1999).

¶ 34. Also weighing in favor of procedural unconscionability is the fact that Cross Country did not provide the credit card agreements to the plaintiffs at

---

[7] Citing law from other jurisdictions, Cross Country argues that it owed no duty to the plaintiffs to explain the arbitration clause. This argument is unpersuasive because it ignores Wisconsin law stating that one factor relevant to procedural unconscionability is whether the terms of a contract were explained to the weaker party. *See Wisconsin Auto Title Loans, Inc. v. Jones*, 2006 WI 53, ¶ 34, 290 Wis. 2d 514, 714 N.W.2d 155.

the time they signed up for Cross Country's credit card. Rather, Cross Country provided the agreements after the fact, along with the plaintiffs' credit cards.

¶ 35. Cross Country admitted that it requires customers to accept the terms of the credit card agreement, that usage of the credit card represents acceptance of the agreement, and that "[u]sually the terms of the agreement include an arbitration clause." These facts, along with the form nature of the credit card agreement, support the circuit court's additional finding that the plaintiffs were presented with the arbitration clause in the credit card agreement on a take-it-or-leave-it basis. *See Wisconsin Auto Title,* 290 Wis. 2d 514, ¶ 34. Cross Country's arbitration clause is therefore an adhesion contract, *see id.,* ¶ 52, a fact that, while not dispositive, weighs in favor of procedural unconscionability.[8] *See id.,* ¶ 53 (although "[o]rdinarily" valid, adhesion contracts are "suspect because they may indicate the inequality of bargaining power between the parties to the contract").

¶ 36. Cross Country does not assert that the circuit court's factual findings are clearly erroneous. Instead, Cross Country argues more generally that the circuit court "did not make explicit findings of fact but merely noted plaintiffs' allegations." We disagree. The circuit court made a number of findings of fact. Those findings are supported by the record, including plaintiffs' affidavits, Cross Country's responses to plaintiffs'

---

[8] One definition of an "adhesion contract" is a "standard-form contract prepared by one party, to be signed by the party in a weaker position, usu[ally] a consumer, who adheres to the contract with little choice about the terms." BLACK'S LAW DICTIONARY 342 (8th ed. 2004).

discovery requests, and allegations not disputed by Cross Country either in the circuit court or on appeal.

¶ 37. Cross Country nonetheless argues that the record is devoid of evidence that the plaintiffs lacked a "meaningful choice." It bases this argument on the assertion that the credit card industry is highly competitive and that the plaintiffs failed to establish that they could not obtain a credit card from a company that did not include an arbitration clause in its credit card agreement.

¶ 38. Regardless whether the credit card industry is highly competitive in a manner that is relevant here, we agree with Cross Country that the record does not disclose precisely what other credit options, if any, were available to the plaintiffs. Still, this is far from a dispositive factor in our decision, as *Wisconsin Auto Title* demonstrates. In *Wisconsin Auto Title*, which involved a short-term, high-interest loan secured by the borrower's vehicle, there was no apparent evidence of the borrower's other credit options. *See id.*, ¶¶ 11–16, 50–51. So far as we know, and so far as the supreme court in *Wisconsin Auto Title* knew, there was significant competition for the business of borrowers of such loans, and the borrower could have obtained a loan on more favorable terms. The supreme court nonetheless concluded, based on the borrower's indigency, need for money, and the unfavorable terms of the loan actually obtained, that the borrower "apparently lacked a meaningful, alternative means to obtain a more favorable loan." *Id.*, ¶¶ 51, 57. Similarly here, the circuit court could reasonably infer from the facts that the plaintiffs lacked a meaningful, alternative means to obtain needed credit on a more favorable basis.

¶ 39. Thus, we are not persuaded by Cross Country's argument that the plaintiffs had to do more to establish that they lacked a "meaningful choice," as that phrase is used in the law of unconscionability. Rather, " 'gross inequality of bargaining power, together with terms unreasonably favorable to the stronger party, may ... *show that the weaker party had no meaningful choice.*' " *Id.*, ¶ 49 n.42 (quoting 2 RESTATEMENT (SECOND) OF CONTRACTS § 208 cmt. d (1979) (emphasis added)).[9] Parties asserting unconscionability are not necessarily required to demonstrate to a factual certainty that they could not have obtained the desired product or service elsewhere under more favorable terms. *See, e.g., Leasefirst*, 168 Wis. 2d at 90 (forum-selection clause was procedurally unconscionable because the clause was not explained or mentioned by a salesperson, the clause was in small print, the plaintiff did not read the clause, and the salesperson did not disclose all of the parties involved in the transaction and their relationships). We think this is particularly true where, as here, the plaintiffs were solicited by the defendant. *See First Fed. Fin. Serv.*, 230 Wis. 2d at 561 ("True, James did not shop around for his security system. That is because he was actively solicited by Western Security.").[10]

---

[9] For the reasons we discuss in the section of this opinion addressing substantive unconscionability, we conclude that the arbitration clause was unreasonably favorable to Cross Country. *See infra*, ¶¶ 42–50.

[10] We recognize that the plaintiffs carry the burden to show unconscionability. *See Wisconsin Auto Title*, 290 Wis. 2d 514, ¶ 30. The point of our discussion above is that the plaintiffs have met that burden under the applicable standards with the facts they have presented. Cross Country has not rebutted the

445

¶ 40. Cross Country also argues that, unlike in *Wisconsin Auto Title*, there was no finding here that the plaintiffs are indigent. *See Wisconsin Auto Title*, 290 Wis. 2d 514, ¶ 50. Although *Wisconsin Auto Title* indicates that indigency is an important procedural unconscionability factor in the context of consumer credit transactions, nothing in the decision makes indigency a prerequisite. On the contrary, the *Wisconsin Auto Title* decision supports the circuit court's determination here. The *Wisconsin Auto Title* court considered the borrower's financial circumstances even though "the specifics of the [borrower]'s financial situation [were] not in the record." *Id.* Similarly here, although the record contains limited facts as to the "specifics" of the plaintiffs' financial situations, those facts support both the factual inference that the plaintiffs' circumstances leave them with comparatively few credit options and the legal conclusion that Cross Country's arbitration clause is procedurally unconscionable. *See ACORN v. Household Int'l, Inc.*, 211 F. Supp. 2d 1160, 1169 (N.D. Cal. 2002) ("Defendants market their services to cus-

---

plaintiffs' case by, for example, showing that the plaintiffs could have found credit card companies willing to offer them a credit card without a similar arbitration clause.

We further observe that, under Cross Country's view, individual plaintiffs, in order to prove they lacked a "meaningful choice," would apparently be required to ascertain and proffer the terms of every credit card reasonably available to them. Without further information, we are unable to determine whether this is a reasonable requirement. We wonder whether it is possible for a plaintiff to prove he or she has exhausted all of the reasonable alternatives and that none of them offered comparable credit without a similar arbitration requirement. However, because we conclude that the plaintiffs here did not need to make such a showing, we address the question no further.

tomers 'who have limited credit histories, modest income, high debt to income ratios, or have experienced credit problems . . . .' These consumers are unlikely to refuse one of their few sources of credit because of the inclusion of an arbitration clause." (citation omitted)).

¶ 41. Based on all of the circumstances, we conclude that a sufficient "quantum" of procedural unconscionability is present.[11]

---

[11] Cross Country contends that the circuit court's determination on procedural unconscionability conflicts with *Buckeye Check Cashing, Inc. v. Cardegna*, 126 S. Ct. 1204 (2006), and *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395 (1967). Cross Country's argument in this respect seems to be that *Buckeye* and *Prima Paint* preclude courts, as opposed to an arbitrator, from considering circumstances relevant to the validity of a contract as a whole when addressing the validity of an arbitration clause. If that is Cross Country's argument, we disagree.

Under *Buckeye* and *Prima Paint*, "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye*, 126 S. Ct. at 1209 (citing *Prima Paint*). Here, the challenge is to the arbitration clause itself and therefore presents a question that a *court* may decide in the first instance. In *Wisconsin Auto Title*, our supreme court explained that "[t]he United States Supreme Court has made it clear that although challenges to the validity of a contract as a whole must be made in arbitration if the contract so provides, challenges to an arbitration provision in a contract may be raised in a court proceeding." *Wisconsin Auto Title*, 290 Wis. 2d 514, ¶ 6 (citing *Buckeye*, 126 S. Ct. at 1208–09 (in turn citing *Prima Paint*, 388 U.S. at 402–04)).

Of course, when deciding whether an arbitration clause is procedurally unconscionable, a court may need to consider facts that could also be relevant to the validity of the contract as a whole. Doing so does not run afoul of *Buckeye* and *Prima Paint*. If common sense does not already make this apparent, our supreme court's decision in *Wisconsin Auto Title* does. The

## 2. Substantive Unconscionability

¶ 42. Substantive unconscionability focuses on the "one-sidedness, unfairness, unreasonableness, harshness, overreaching, or oppressiveness of the provision at issue." *Wisconsin Auto Title*, 290 Wis. 2d 514, ¶ 59. "In many of the cases in which a contract provision has been held to be substantively unconscionable, a creditor has unduly restricted a debtor's remedies or unduly expanded its own remedial rights." *Id.*, ¶ 60.

¶ 43. The circuit court here concluded that the arbitration clause was substantively unconscionable because it prevents the plaintiffs from obtaining any of the relief they seek for abusive debt collection practices under the Wisconsin Consumer Act and because it unfairly prohibits class-wide relief. We agree that these features render the arbitration clause substantively unconscionable.

¶ 44. Cross Country does not frame its argument in terms of whether its arbitration clause is "commercially reasonable." *See id.*, ¶ 36. Rather, Cross Country argues that the arbitration clause is not substantively unconscionable because the plaintiffs retain their "substantive" rights under the Wisconsin Consumer Act, although they must assert those rights through arbitration. We have already rejected this argument in the context of the choice of law section of this opinion. As in that context, Cross Country again argues that Delaware law applies only to the legality, enforceability, and

court in *Wisconsin Auto Title*, in deciding that an arbitration clause was procedurally unconscionable, considered numerous facts that also could have been relevant to the validity of the contract as a whole. *See Wisconsin Auto Title*, 290 Wis. 2d 514, ¶¶ 42–58.

interpretation of the credit card agreement. However, as we have explained, the arbitration clause incorporates the choice of law clause and, in doing so, makes Delaware law the state law that applies to all "Claims," a term broadly defined under the arbitration clause to preclude claims under the Wisconsin Consumer Act. *See supra,* ¶¶ 18–24.

¶ 45. Thus, the arbitration clause, if enforced, strips the plaintiffs' right to assert claims and seek remedies under the Wisconsin Consumer Act, regardless whether they proceed individually or on a class basis, and regardless whether they proceed in litigation or in arbitration. The arbitration clause therefore constitutes a significant waiver of substantive rights that unduly restricts the plaintiffs' remedies. *See Kett v. Community Credit Plan, Inc.*, 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (suggesting that the Act may be among the strongest consumer protection laws in the nation). Moreover, it does not seem plausible that the extent of the waiver would be apparent to the average credit card holder.[12]

¶ 46. Cross Country's arbitration clause also prohibits the plaintiffs from proceeding on a class-wide or representative basis, and from otherwise joining claims

---

[12] We recognize that the arbitration clause informs cardholders that: "[Y]**our ability to obtain information from us and to appeal is more limited in an arbitration than in a lawsuit. Other rights that you would have if you went to court may also not be available in arbitration.**" In addition, the first page of the credit card agreement prominently states: "**THIS AGREEMENT CONTAINS AN ARBITRATION PROVISION THAT MAY SUBSTANTIALLY LIMIT OR AFFECT YOUR RIGHTS.**" These warnings, however, do not make clear to cardholders that they are waiving significant substantive rights under the Wisconsin Consumer Act, *regardless whether a dispute proceeds in arbitration or litigation.*

brought by other cardholders, regardless whether the plaintiffs proceed in litigation or arbitration.[13] This aspect of the arbitration clause also contributes to its unconscionability.

¶ 47. First, although Wisconsin courts have not addressed the question of whether an arbitration clause may be unconscionable based in whole or in part on the fact that the clause prohibits class actions, it is significant that our supreme court has concluded that even a limitation on one type of class action *relief* contributed to an arbitration clause's substantive unconscionability. *See Wisconsin Auto Title*, 290 Wis. 2d 514, ¶ 73.

¶ 48. Second, we acknowledge that a majority of state and federal courts have enforced class action waivers and found them *not* unconscionable. We are, however, persuaded by what appears to be a growing minority of courts that a waiver of class-wide relief is a significant factor (and in at least one instance a determinative factor) in invalidating an arbitration provision as unconscionable.[14] These courts have recognized that

---

[13] Thus, our decision does not address the situation where an arbitration clause prohibits class-wide litigation but expressly permits class-wide arbitration.

[14] *See Leonard v. Terminix Int'l Co., L.P.*, 854 So. 2d 529, 534, 538 (Ala. 2002) (arbitration clause unconscionable where it deprived plaintiffs of a meaningful remedy by limiting certain damages and precluding eligibility for class action treatment); *Powertel, Inc. v. Bexley*, 743 So. 2d 570, 574, 576–77 (Fla. Dist. Ct. App. 1999) (arbitration clause unconscionable where it limited damages, removed defendant's exposure to class-wide remedies, and forced the plaintiff to waive statutory remedies, including state consumer act remedies), *review denied*, 763 So. 2d 1044 (Fla. 2000); *Muhammad v. County Bank*, 912 A.2d 88, 91, 101 (N.J. 2006) (it was unconscionable for defendants to deprive plaintiff of the class-action mechanism, whether in litigation or arbitration, because the public interest at stake in

the availability of class-wide relief is often the only means of vindicating consumer rights. *See, e.g., Discover Bank v. Superior Court*, 113 P.3d 1100, 1109 (Cal. 2005) ("[C]lass actions and arbitrations are, particularly in the consumer context, often inextricably linked to the vindication of substantive rights."); *State ex rel. Dunlap v. Berger*, 567 S.E.2d 265, 278 (W. Va. 2002) ("In many cases, the availability of class action relief is a *sine qua non* to permit the adequate vindication of consumer rights."). This is particularly so when the damages involved are comparatively small for each individual consumer. *See Discover Bank*, 113 P.3d at 1108, 1110; *Muhammad v. County Bank*, 912 A.2d 88, 97–98 (N.J. 2006). Moreover, without the availability of a class-wide mechanism, many consumers may never realize that they have been wronged because they may not know that the defendant's conduct is illegal. *See*

plaintiff's and fellow consumers' ability to effectively pursue their statutory rights under state's consumer protection act overrides the defendants' right to enforce a bar on class arbitration); *see also Discover Bank v. Superior Court*, 113 P.3d 1100, 1103, 1110 (Cal. 2005) (class action waivers, whether for litigation or arbitration, are unconscionable under "some circumstances," including when dispute involves small amounts of damages and plaintiffs allege that defendant has carried out a scheme to cheat large numbers of consumers out of individually small sums of money); *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 254–56, 274–75 (Ill. 2006) (class action waiver in arbitration clause unconscionable where it requires customer to arbitrate all claims, but does not reveal the cost, and contains a liquidated damages clause such that the plaintiff's only reasonable means of obtaining a complete remedy is as the representative or member of a class); *State ex rel. Dunlap v. Berger*, 567 S.E.2d 265, 270–71, 280 (W. Va. 2002) (prohibitions on punitive damages and class action relief in arbitration agreement rendered application of agreement unconscionable).

*Muhammad*, 912 A.2d at 100.[15] In addition, the prospect of class-wide relief "ordinarily has some deterrent effect on a manufacturer or service provider," *Powertel, Inc. v. Bexley*, 743 So. 2d 570, 576 (Fla. Dist. Ct. App. 1999), but any such effect is eviscerated by arbitration clauses like Cross Country's.

¶ 49. We leave it to the circuit court on remand to determine whether this case ultimately is appropriate for class certification. Suffice it to say for our purposes here that the principles behind class-wide mechanisms of relief, whether in litigation or arbitration, all appear to have some relevance in the context of this case so far as we can discern from the limited record presently before us.

¶ 50. We conclude that by both (1) precluding the plaintiffs from asserting claims or remedies under the Wisconsin Consumer Act and (2) prohibiting all forms of class-wide relief, Cross Country has bound the plaintiffs to an arbitration clause that unduly restricts their remedies and is unreasonably favorable to Cross Country. The clause, therefore, is substantively unconscionable.

---

[15] Cross Country relies on the fact that the arbitration clause provides that the plaintiffs are free to bring a small claims action. We are not convinced that this provision is significant. Cross Country assumes that attorneys are willing to take small claims cases for plaintiffs on an individual basis or that plaintiffs are able to effectively represent themselves in small claims court against multimillion dollar national corporations such as Cross Country. Moreover, the allowance for a small claims action does nothing to change the arbitration clause's dictate that Delaware law be applied to all "Claims," thereby precluding the plaintiffs from asserting any claims or remedies under the Wisconsin Consumer Act. Therefore, the availability of a small claims action does not change our analysis.

## C. *Cross Country's Preemption Argument*

¶ 51. As a final·matter, we briefly comment on Cross Country's argument that, to the extent the Wisconsin Consumer Act precludes the plaintiffs' ability to waive class action rights in an arbitration agreement, it is preempted by the Federal Arbitration Act.

¶ 52. The Wisconsin Consumer Act contains class action provisions. *See* WIS. STAT. § 426.110. The Act also generally provides that consumers may not waive "rights or benefits" under the Act. WIS. STAT. § 421.106(1). Cross Country thus interprets the Act to prohibit class action waivers like the one in its credit card agreement.

¶ 53. We need not reach the preemption issue that Cross Country's argument raises because our conclusion that Cross Country's arbitration clause is unconscionable is based on the common law of contracts, not on any prohibition on class action waivers under the Wisconsin Consumer Act. *See Wisconsin Auto Title*, 290 Wis. 2d 514, ¶ 79 ("Our contract law on unconscionability does not single out arbitration provisions. We therefore conclude that the Federal Arbitration Act does not preempt our unconscionability analysis." (footnote omitted)).[16]

¶ 54. In any event, it appears that Cross Country's argument is of questionable merit in light of *Wisconsin Auto Title*. There, the supreme court addressed a substantially similar argument and explained that United States Supreme Court precedent "strongly

---

[16] The Federal Arbitration Act provides that, in transactions "involving commerce," agreements to arbitrate are generally valid and enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2005).

suggests that the Wisconsin Consumer Act would not be preempted were the U.S. Supreme Court to address the issue." *Id.*, ¶¶ 83–84 (citing and quoting from *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987)); *cf. Madison Beauty Supply, Ltd. v. Helene Curtis, Inc.*, 167 Wis. 2d 237, 241–44, 481 N.W.2d 644 (Ct. App. 1992) (Federal Arbitration Act preempted provisions in Wisconsin Fair Dealership Law to the extent that those provisions required that a case be tried in a judicial forum).

## *Conclusion*

¶ 55. In sum, Wisconsin law applies to the question of whether Cross Country's arbitration clause is unconscionable and, applying Wisconsin law, we agree with the circuit court that the clause is procedurally and substantively unconscionable. We therefore affirm the circuit court's order denying Cross Country's motion to compel arbitration and stay court proceedings. Because this is a review of a non-final order, we remand for further proceedings.[17]

---

[17] We ordered replacement briefing in this case so that the parties could address *Wisconsin Auto Title*. That same order requested that the parties address "whether *Atkins v. Swimwest Family Fitness Center*, 2005 WI 4, 277 Wis. 2d 303, 691 N.W.2d 334, is relevant to this appeal and, if so, why." We made that request because of the possible comparison between aspects of procedural unconscionability and the *Atkins* court's reliance, in invalidating an exculpatory clause, on lack of opportunity to bargain. *See Atkins v. Swimwest Family Fitness Ctr.*, 2005 WI 4, ¶¶ 25–26, 277 Wis. 2d 303, 691 N.W.2d 334. In response, Cross Country argues that *Atkins* does not apply because Cross Country's arbitration clause is not an exculpatory clause. The plaintiffs assert that Cross Country's arbitration clause is exculpatory in nature and, therefore, unenforceable under *Atkins*. We do not reach the question of whether Cross

*By the Court.*—Order affirmed and cause remanded.

Country's clause could be characterized as exculpatory or whether *Atkins* provides support for our conclusion here that the arbitration clause is unconscionable. Our silence should not be construed as an implicit opinion on these topics, one way or the other.