Curtis CLAY, Plaintiff-Appellant,

v.

HORTON MANUFACTURING CO., INC., Defendant-Respondent.

Court of Appeals

*No. 92-1300. Submitted on briefs October 26, 1992.—Decided November 10, 1992.*

(Also reported in 493 N.W.2d 379.)

On behalf of the plaintiff-appellant, the cause was submitted on the brief of *David M. Erspamer* of *Erspamer Law Office* of Amery.

On behalf of the defendant-respondent, the cause was submitted on the brief of *R. Ann Huntrods* and *Margo L. Coyle* of *Briggs and Morgan* of St. Paul, Minnesota.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.  Curtis Clay appeals a summary judgment dismissing his claim for unlawful termination against his former employer, Horton Manufacturing Co., Inc. Clay contends that the terms of the company employe handbook and posted company policy regarding

layoffs altered his at-will employe status, and that Horton Manufacturing breached the employment contract by failing to follow layoff procedures. Because we conclude that whether the employe handbook and company policy were intended to be part of the employment contract are disputed material facts, we reverse the grant of summary judgment.

Horton Manufacturing employed Clay for approximately seven years. When Clay began his employment, Horton Manufacturing gave him an employe handbook and advised him that it contained various company policies. Concerning layoffs, the handbook provided that "[l]ength of service is used as a basis for . . . layoff . . .." The handbook stated that its policies were subject to change by management.

In 1988, Horton Manufacturing posted a policy statement regarding layoffs on the bulletin board. The policy provided in part:

> 2. Employees will be laid off/displaced based on their length of service within their work group in that department.
>
> 3. Any employee affected by a reduction in the workforce, or displaced, may be placed in a job within the same department at a rate equal to or lower than their rate prior to the workforce reduction/displacement, provided that they are qualified to do the job. It is understood that the employee will be assigned to a different job by the Plant Management, and must displace a less senior employee on the job for which he or she is qualified.

In 1989, Horton Manufacturing issued a revised employe handbook to all employes, including Clay. The first page of the revised handbook contained the following disclaimer: "This handbook is intended for informa-

351

tional purposes only and neither it, company practices, nor other communications create an employment contract or term. . .. [T]he policies . . . outlined in this handbook are subject to . . . change by management at any time." Regarding layoffs, the revised handbook provided that "[l]ength of service is used as a baseline for . . . layoff . . .."[1]

Clay asserts that notwithstanding the handbook's disclaimer, it became a part of his employment contract. He bases this assertion upon alleged repeated oral assurances by James Hasart, the plant superintendent, and other management personnel that the policies reflected in the employe handbook were binding on both Horton Manufacturing and its employes. Clay asserts that Hasart and Clay's supervisor, Dan Conroy, told him that employes and Horton Manufacturing had to "obey the employee handbook. We obey it, you obey it." He also claims that every time he had a question he was referred to the employe handbook and that he was repeatedly told that if he obeyed the rules in the handbook he would keep his job.

Hasart testified at deposition that he refers to the handbook when making personnel decisions and that he relies on the handbook's policies when answering employe questions. Hasart also stated that the handbook summarizes company policy and that he did not know if anyone at Horton Manufacturing had ever told Clay that the handbook was not binding on both Horton Manufacturing and its employes. However, Hasart also testified that he considered the handbook to be a guide.

---

[1] Because the 1989 revised handbook was in effect at the time Clay was laid off, its terms control. *See Bantz v. Montgomery Estates, Inc.*, 163 Wis. 2d 973, 981, 473 N.W.2d 506, 509 (Ct. App. 1991).

Clay also alleges that the 1988 posted policy became a part of his employment contract. He claims that management personnel told him that employes with less seniority would be laid off first. Hasart also testified at deposition that posted policies are enforceable to the same extent as the handbook.

Clay contends that the revised handbook's provisions and the 1988 posted policy modified the terms of his employment contract and that Horton Manufacturing breached the employment contract by laying him off inconsistent with company policy. Horton Manufacturing concedes that at the time Clay was laid off, he had seniority over two-thirds of its employes.

When reviewing a grant of summary judgment, we apply the same methodology as the trial court. *Schultz v. Industrial Coils, Inc.*, 125 Wis. 2d 520, 521, 373 N.W.2d 74, 74 (Ct. App. 1985).

> We first examine the complaint to determine whether a claim has been stated and then the answer to ascertain whether it presents a material issue of fact. If they do, we then examine the moving party's affidavits to determine whether a *prima facie* case for summary judgment has been made — in this case a defense which would defeat the plaintiff's claim. If it has, we look to the opposing party's affidavits [or other proof] to determine whether any material facts are in dispute which would entitle the opposing party to a trial.

*Id.* at 521, 373 N.W.2d at 74-75 (citations omitted; emphasis in original).

If there are disputed issues of material fact, a grant of summary judgment is inappropriate and must be reversed so that the disputes can be resolved by a

factfinder after trial. *Tomlinson v. MidAmerica Mut. Life Ins. Co.*, 168 Wis. 2d 92, 95-96, 483 N.W.2d 234, 236 (Ct. App. 1992). The alleged factual dispute, however, must concern a fact that affects the resolution of the controversy, and the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Baxter v. DNR*, 165 Wis. 2d 298, 312, 477 N.W.2d 648, 654 (Ct. App. 1991). Any reasonable doubt as to the existence of disputed material fact is resolved against the moving party. *Heck & Paetow Claim Serv., Inc. v. Heck*, 93 Wis. 2d 349, 356, 286 N.W.2d 831, 834 (1980).

Generally, under Wisconsin law, employment is terminable at will by either party without cause. *Forrer v. Sears, Roebuck & Co.*, 36 Wis. 2d 388, 393, 153 N.W.2d 587, 589-90 (1967). Whether an employe handbook and posted company policy became part of the employment contract and modified the at-will employment relationship, by virtue of the plant superintendent's oral representations, are mixed questions of law and fact.

An employe handbook may modify an employment contract. *Ferraro v. Koelsch*, 124 Wis. 2d 154, 169-70, 368 N.W.2d 666, 674 (1985). However, an employer's mere issuance of an employe handbook to its employes is insufficient to alter an at-will employment relationship. *Id.* at 167, 368 N.W.2d at 673. Whether an employe handbook becomes the terms and conditions of employment depends upon the parties' intent. *Id.* Where there is a dispute concerning the parties' intent, a fact issue is presented and summary judgment is inappropriate. *Peninsular Carpets, Inc. v. Bradley Homes, Inc.*, 58 Wis. 2d 405, 416, 206 N.W.2d 408, 413 (1973). We conclude that Clay has established disputed material facts precluding summary judgment for the following reasons.

We note that the employe handbook contains a specific disclaimer that neither its policies and provisions nor any other communications (e.g., the 1988 posted policy) is a part of the employment contract. Nonetheless, this disclaimer is not conclusive of this issue. It is possible for a company through its agents to modify an employment contract to include company policies notwithstanding the disclaimer, if both parties intend to do so. *See Garvey v. Buhler*, 146 Wis. 2d 281, 286-87, 430 N.W.2d 616, 618-19 (Ct. App. 1988). Therefore, in this case, it is necessary to determine the intent of both Clay and Horton Manufacturing regarding the terms of the employment relationship.

Clay asserts that Hasart repeatedly assured him that Horton Manufacturing was bound by the handbook's provisions and procedures. Specifically, Clay alleges that Hasart and other management personnel told him they were bound by the seniority provisions relating to layoffs. If the factfinder believes that these assurances were made, it is possible for it to conclude that the assurances evince Horton Manufacturing's intent to alter the employment contract to encompass the company policies reflected in the handbook or posted on the bulletin board. It is also possible for the factfinder to conclude that Hasart had apparent authority to bind Horton Manufacturing by making these promises and that Clay reasonably relied on them.

We recognize that Clay's allegations are disputed and that a factfinder may conclude that Hasart and other management personnel did not make these assurances, or that the assurances did not evidence Horton Manufacturing's intention to be bound by the handbook's or the 1988 posted policy's terms. Regardless of how those disputed issues of fact are ultimately resolved, the parties' intent is a material element in defining the

employment relationship between Clay and Horton Manufacturing. If the parties intended to be bound by the terms of the employe handbook and/or the 1988 posted policy, those terms would govern the employment relationship and not the general at-will provisions of Wisconsin law.

Because whether the parties intended to alter their employment relationship is a question of disputed fact, the granting of summary judgment is inappropriate. We therefore reverse the summary judgment and remand the matter to the trial court. While our discussion applies to both the employe handbook and the 1988 posted policy, at trial they should be treated separately because Clay contends that each, separately, modified the at-will relationship and were binding upon Horton Manufacturing and its employes.

*By the Court.*—Judgment reversed and cause remanded with directions.