Kathleen R. HELLAND, Plaintiff-Appellant,

v.

KURTIS A. FROEDTERT MEMORIAL LUTHERAN HOSPITAL,
a/k/a Froedtert Memorial Lutheran Hospital,
Defendant-Respondent.

Court of Appeals

*No. 98–0854. Submitted on briefs June 1, 1999.—Decided July
27, 1999.*

(Also reported in 601 N.W.2d 318.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Patrick J. Hudec* and *Gabrielle Boehm* of *Hudec Law Offices, S.C.* of East Troy.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Tamara Hayes O'Brien* of *Whyte Hirschboeck Dudek S.C.* of Menomonee Falls.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

WEDEMEYER, P.J. Kathleen R. Helland appeals from a judgment granting a motion for summary judgment in favor of Kurtis A. Froedtert Memorial Lutheran Hospital (Froedtert). Helland contends that the trial court improperly granted summary judgment dismissing her wrongful discharge/breach of contract claim, her intentional infliction of emotional distress claim, and her statutory breach of privacy claim. Because, as a matter of law, the trial court prop-

erly granted summary judgment dismissing Helland's three causes of action, we affirm.[1]

## BACKGROUND

Helland became an employee of Froedtert in October 1984. She worked as a registered nurse in the Neurosciences Intensive Care Unit (NICU). When she was hired, she did not execute any employment contract. She was provided with an "Employee Handbook" (Handbook). In 1985 and in 1990 Froedtert also provided her with Handbook updates. The Handbook was a "working guide summarizing Froedtert's employment policies and procedures." It is undisputed that in the 1984 Handbook: (1) Froedtert reserved the right to unilaterally modify the Handbook and all other hospital policies regardless of whether they were contained in the Handbook; (2) Froedtert reserved the right to take any disciplinary action against employees it deemed appropriate regardless of the procedures set forth in the Handbook; and (3) finally, the 1990 Handbook itself states that its contents do not create any contractual rights, and that personnel of Froedtert are employees "at will" whose employment may be terminated at any time for any reason or for no reason at all.

During her employment, Helland received three written warnings regarding her conduct and two cautions regarding her behavior. Several days before May 8, 1996, Helland asked, and was granted, permission to

---

[1] Helland's complaint actually alleged five causes of action: (1) wrongful discharge/breach of contract; (2) tortious wrongful discharge; (3) intentional misrepresentation; (4) intentional infliction of emotional distress; and (5) statutory invasion of privacy. On appeal, however, Helland does not address claims (2) and (3). Therefore, we presume she is waiving any challenge in regard to those two claims.

take a late lunch to enable her to keep a doctor's appointment. Arrangements were made to cover for her absence in the NICU. On May 8, shortly before Helland left for her late lunch, she told a co-worker that she might not be returning for the remainder of her shift after her doctor's appointment. Because patient coverage is important in the NICU, the co-worker discussed the problem with another co-worker. In turn, Helland's supervisor, Pamela Maxon-Cooper, was informed of Helland's anticipated intention not to return to work. Maxon-Cooper questioned Helland about her statement and Helland confirmed that she might not return. In view of her disciplinary history and alleged lack of concern for coverage of the patients, Maxon-Cooper terminated Helland.

Helland filed the complaint that the trial court dismissed on summary judgment. Helland now appeals.

## ANALYSIS

Basic to Helland's three claims of trial court error is her assertion that genuine issues of material fact existed to foreclose granting of summary judgment on her claims of wrongful discharge/breach of contract, intentional infliction of emotional distress, and violation of privacy.

Whether summary judgment was appropriately granted presents a question of law which we review pursuant to § 802.08(2), STATS., independently of the trial court. *See Fortier v. Flambeau Plastics Co.*, 164 Wis. 2d 639, 651–52, 476 N.W.2d 593, 597 (Ct. App. 1991). A court examines summary judgment motions in a three-step process; the court proceeds to each succeeding step only if it determines that the appropriate

party has satisfied the burden on the preceding one. *See Grams v. Boss,* 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476–77 (1980).

First, it must be determined that the pleadings set forth a claim for relief as well as a material issue of fact. *See id.* at 338, 294 N.W.2d at 476. Second, the court must determine whether the moving party's affidavits and other proofs present a *prima facie* case for summary judgment. *See id.* at 338, 294 N.W.2d at 476–77. A moving party states a *prima facie* case for summary judgment by showing a defense that would defeat the claim. *See Preloznik v. City of Madison,* 113 Wis. 2d 112, 116, 334 N.W.2d 580, 583 (Ct. App. 1983). Finally, the court examines the affidavits and proofs of the opposing party to determine whether any disputed material fact exists, or whether any undisputed material facts are sufficient to allow for reasonable alternative inferences. *See Grams,* 97 Wis. 2d at 338, 294 N.W.2d at 477.

■

The mere allegation of a factual dispute will not defeat an otherwise properly supported motion for summary judgment. *See Kenefick v. Hitchcock,* 187 Wis. 2d 218, 224, 522 N.W.2d 261, 263 (Ct. App. 1994). A party opposing a summary judgment motion must set forth "specific facts," evidentiary in nature and admissible in form, showing that a genuine issue exists for trial. It is not enough to rely upon unsubstantiated conclusory remarks, speculation, or testimony which is not based upon personal knowledge. *See Maynard v. Port Publications, Inc.,* 98 Wis. 2d 555, 561–63, 297 N.W.2d 500, 504–05 (1980).

In general reference to all three of her claims of error, Helland asserts that genuine issues of fact exist with regard to what Froedtert knew at the time she

was fired, its motivation for firing her, whether Froedtert was justified in telling her co-workers that she was being treated by a physician who specializes in the treatment of drug and alcohol abuse, and how Froedtert's actions in this regard affected her.

■ Specifically, Helland first claims that the trial court erred when it concluded that she was an "at-will" employee. She contends that the trial court should have determined that the Handbook created an employment contract between Froedtert and her. In Wisconsin, employment is generally terminable "at will" by either party without cause. *See Clay v. Horton Mfg. Co., Inc.*, 172 Wis. 2d 349, 354, 493 N.W.2d 379, 381 (Ct. App. 1992). An employee handbook may modify an "at-will" employment relationship. *See Ferraro v. Koelsch*, 124 Wis. 2d 154, 169, 368 N.W.2d 666, 674 (1985). Because of Wisconsin's policy favoring employment "at will," the mere issuance of an employee handbook for guidance and orientation of employees is insufficient to alter an "at-will" employment relationship. *See id.* An "at-will" employment relationship is altered only when a handbook contains express provisions from which it can reasonably be inferred that the parties intended to bind each other to a different employment relationship. *See Bantz v. Montgomery Estates, Inc.*, 163 Wis. 2d 973, 979, 473 N.W.2d 506, 508 (Ct. App. 1991).

At the focal point of the dispute are two editions of the Employee Handbook: the 1984 version and the 1990 updated version. When Helland was hired in 1984, the Handbook provided that once an employee completed the probationary work period, that employee could only be disciplined pursuant to the guidelines set forth in the Handbook, including disci-

pline "for cause." Helland argues that this provision, in effect, changed the employment relationship from one of "at will" during the probationary period, to one of a contractual nature after probation was completed. As a result, she contends that she could only be discharged "for cause," and then, only after a progressive disciplinary procedure was followed as outlined in the 1984 Handbook. *See Ferraro*, 124 Wis. 2d at 164–65, 368 N.W.2d at 672 (employee handbook can create contractual relationship).

The 1990 Handbook update, however, contained a specific disclaimer that the Handbook created any employment contractual rights. In her affidavit opposing summary judgment, Helland asserted that she never received a copy of the 1990 revisions, never read them, and never agreed to be bound by them. Regardless of these contentions, Helland's first claim cannot withstand the tests of summary judgment scrutiny.

A review of the record demonstrates that Helland's claim fails. First, the acknowledgment form for the 1984 Handbook, which Helland admits she read and signed, provides in part:

> I understand the Handbook is a working guide of policies, rights and responsibilities for Froedtert employees. I understand it does not replace or supersede original hospital policies. Changes or additions to hospital policies occurring after receipt of my Handbook will be communicated to me so I may keep my Handbook current. At my request, my supervisor or the Personnel Department will review original policies with me.
>
> I also understand the policies summarized in my Handbook and all other Froedtert Hospital policies, practices and procedures are subject to change at the sole discretion of management.

Unlike the handbook in *Ferraro*, this acknowledgment form declared that the Froedtert 1984 Handbook was a summarized "working guide" of the policies, rights and responsibilities. Further, it specifically provided that the Handbook was not a replacement of original hospital policies. It also unequivocally advised Helland that the policies synthesized in the Handbook and all other hospital policies, practices and procedures were subject to change at the sole discretion of Froedtert's management. *See Olson v. 3M Co.*, 188 Wis. 2d 25, 54, 523 N.W.2d 578, 589 (Ct. App. 1994) (concluding that providing a handbook for "guidance" was insufficient to alter "at-will" employee status).

In addition to this clear language, even the provisions related to non-probationary employees, i.e., rules of employee conduct, discharge for "just cause," and progressive disciplinary procedures, are not free of qualifying language. The progressive disciplinary procedure "may result" from employee misconduct. The standards of conduct are not "all encompassing." If questioned conduct on the part of an employee occurs, Froedtert "reserves the right to take necessary and reasonable action, including discharge."

Last, the 1984 Handbook advises that disciplinary procedures "are included in the process when it is believed that progressive discipline will be effective." Thus, complete reliance on the 1984 Handbook to determine Helland's status as an employee is misplaced because her status as an "at-will" employee was not changed when she signed the acknowledgment receipt form.

If the 1984 Handbook offered no support for Helland's first claim of error, the 1990 update "*a minore ad majus*" offers no succor. Helland's reliance on the 1984 version of the Handbook is based on her alleged inabil-

ity to recall receiving the 1990 updated version and the lack of any proof that she ever received it. Her deposition testimony, however, belies her position in that it demonstrates she did receive the 1990 Handbook update, and was aware of how the updated version was promulgated to the employees. Although Helland averred in her affidavit in opposition to Froedtert's summary judgment motion that she "was not provided with other handbook updates," a genuine issue of material fact cannot be created by an affidavit contradicting earlier deposition testimony. *See Wolski v. Wilson*, 174 Wis. 2d 533, 540, 497 N.W.2d 794, 797 (Ct. App. 1993); *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975); *Office Supply Co., Inc. v. Basic/Four Corp.*, 538 F. Supp. 776, 786 (E.D. Wis. 1982). Based on the foregoing, the trial court correctly concluded "there is no dispute that Helland received the updated version of the Handbook."

Because the trial court properly concluded that Helland received the 1990 Handbook update, its terms are controlling. *See Bantz*, 163 Wis. 2d at 982, 473 N.W.2d at 509. To demonstrate that the 1990 update provides no support for Helland's first claim of error, we need not present a detailed analysis because the notification language and other provisions found within the Handbook clearly accomplish this task.

On the backside of the cover page of the March 1990 version of the Handbook, there appears encapsulated under the boldly printed words "IMPORTANT NOTICE:"

> This Handbook is not intended to create, nor does it create, contract rights. Notwithstanding any provision herein, the Hospital reserves the right to make

employment-related decisions on a case-by-case basis. The Hospital further reserves the right to amend or delete any provision of this Handbook at any time, without advance notice.

Page two, entitled "Acknowledgement Form," in part, declares:

3. The Handbook is a summary of Froedtert Hospital's policies, practices and procedures related to employment. The Handbook is not intended to replace original Hospital policies, and the Hospital reserves the right to change such policies and the provisions of the Handbook at any time without notice.

4. All Hospital employees are employees at will and, subject to applicable federal and state statutes, the relationship can be terminated at any time for any reason or no reason at all.

5. Froedtert Memorial Lutheran Hospital reserves the right and will exercise the right to take necessary and reasonable action, including discharge, for certain conduct not specifically delineated in the "Rules of Employee Conduct" when the conduct is of such a nature that [sic] to require such action.

Finally, under the "Rules of Employee Conduct" section, there is set forth, in part, the following language:

**INTRODUCTION:**
Written standards of conduct and performance cannot be all encompassing. Froedtert Memorial Lutheran Hospital reserves the right and will exercise the right to take whatever action it deems necessary, up to and including discharge, for conduct which adversely affects the Hospital's patients or visitors or employees, or which is otherwise unac-

ceptable whether or not such conduct is specifically addressed in these "Rules of Employee Conduct."

We conclude that the above cited language reserving Froedtert's right to unilaterally modify policies and procedures in the employer-employee relationship refutes any assertion that a contractual relationship existed. *See Olson*, 188 Wis. 2d at 54, 523 N.W.2d at 589 (concluding that providing a handbook for "guidance" was insufficient to alter "at-will" employee status). Accordingly, Helland was an "at-will" employee and, absent any allegations that her termination occurred in violation of public policy, no claim for wrongful discharge exists. *See Brockmeyer v. Dun & Bradstreet*, 113 Wis. 2d 561, 573, 335 N.W.2d 834, 840 (1983).

Helland's second assertion is that the trial court erred when it granted summary judgment dismissing her intentional infliction of emotional distress claim. She contends that Froedtert's conduct in terminating her employment provides a basis for the claim. We are not convinced.

A cause of action for intentional infliction of emotional distress is a claim sounding in tort. In distinction, an action for wrongful discharge or termination sounds in contract. *See generally Bourque v. Wausau Hosp. Ctr.*, 145 Wis. 2d 589, 427 N.W.2d 433 (Ct. App. 1988). From our review of the record, it is evident that the contents of Helland's complaint and her brief on appeal demonstrate that her claim is one of a wrongful discharge nature emanating from an employment relationship for which emotional distress redress is not allowed. *See Bachand v. Connecticut*

*Gen. Life Ins. Co.*, 101 Wis. 2d 617, 630–32 & n.3, 305 N.W.2d 149, 155 & n.3 (Ct. App. 1981).[2]

Last, Helland claims that the trial court erred in dismissing her breach of privacy claim. Her claim is based on § 895.50(1), (2)(c), STATS., which provides relief, including compensatory damages, to one whose privacy has been unreasonably invaded, subject to the common law defenses of absolute and qualified privilege, *see* § 895.50(3), STATS.

Helland contends that her right to privacy was unreasonably invaded when her supervisor, Maxon-Cooper, disclosed to her co-workers at a staff meeting, that she was being assessed or treated at the Milwaukee Psychiatric Hospital, by a physician whose specialty was well-known, leaving the false impression that she was being treated for alcohol abuse. She alleged that two of her co-workers who attended the meeting advised her of Maxon-Cooper's "announcement." Helland did not attend the staff meeting, nor did she have personal knowledge of her supervisor's alleged statement. She did not obtain affidavits from the two co-workers who attended the staff meeting. She did not produce any contemporaneously made notes relating to her conversation with her co-workers, nor did she produce any evidence corroborating her assertion that the physician mentioned was well-known for treating patients for drug and alcohol abuse.

To support its motion for summary judgment, Froedtert submitted the affidavit of Maxon-Cooper. She averred, based upon personal knowledge, that if

---

[2] Even if Helland's emotional distress claim were properly pleaded, summary judgment would still be appropriate under the "exclusive remedy" provision of the Workers Compensation Act. *See Jenson v. Employers Mut. Cas. Co.*, 161 Wis. 2d 253, 263, 468 N.W.2d 1, 5 (1991).

asked by a staff member about the absence of Helland, she only advised that Helland was on medical leave and seeking treatment.

■

Once a moving party has established a *prima facie* case for summary judgment, the opposing party has the burden to establish that there is a genuine issue for trial. To meet this burden, however, an adverse party may not rest upon the mere allegations or denials of the pleadings, but must file affidavits or other supporting papers based upon personal knowledge of specific evidentiary facts that are admissible. *See Phillips v. Behnke*, 192 Wis. 2d 552, 563, 531 N.W.2d 619, 623 (Ct. App. 1995) and § 802.08(3), STATS. Applying these criteria to Helland's submissions, the trial court declared:

> The plaintiff's affidavit here is woefully short on this issue . . . it's based solely on speculation or on evidence not admissible at trial and, in fact, normally is not part of an affidavit.
>
> In an affidavit, you must assert something that you personally saw, that you personally did, or that you personally spoke of, and not what someone else has reported to you unless that someone else is the employer or the party opponent.
>
> . . . I'm finding that there's no real basis for her contention; and, therefore, that there would be no basis here as a matter of law. She has no cause of action.

We conclude that the trial court was correct for all the reasons stated. Helland's last claim of error also fails.

*By the Court.*—Judgment affirmed.

SCHUDSON, J. *(concurring)*. Although I agree with the majority decision, I do not join in the opinion. Accordingly, I respectfully concur.