COURT OF APPEALS
DECISION
DATED AND FILED

September 12, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.     2018AP2346**

**STATE OF WISCONSIN**

Cir. Ct. No.  2015CV2955

**IN COURT OF APPEALS
DISTRICT IV**

---

SUMMIT CREDIT UNION,

   PLAINTIFF-COUNTER DEFENDANT-RESPONDENT,

  V.

DAVID L. MANCL,

   DEFENDANT-COUNTER CLAIMANT-APPELLANT.

---

         APPEAL from a judgment of the circuit court for Dane County: PETER ANDERSON, Judge. *Affirmed*.

         Before Fitzpatrick, P.J., Blanchard and Kloppenburg, JJ.

         **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

         ¶1      PER CURIAM.  Summit Credit Union initiated this action in the Dane County Circuit Court seeking a money judgment against David L. Mancl

after Mancl failed to pay amounts due on his credit card account with Summit. Mancl counterclaimed alleging that Summit violated provisions of the Wisconsin Consumer Act (WIS. STAT. chs. 421-427). The circuit court granted summary judgment in favor of Summit on its claim for a money judgment against Mancl and on some of Mancl's counterclaims. The case proceeded to a jury trial on the remaining counterclaims. At the close of Mancl's evidence, the circuit court granted Summit's motion to dismiss the remaining counterclaims. Mancl appeals the circuit court's rulings disposing of his counterclaims. We affirm.

## BACKGROUND

¶2    The following facts are undisputed.[1]

---

[1] At the outset, we observe that Summit has extensively utilized screen shots in its brief in this court. We appreciate effective uses of word processing technology, and we do not discourage parties from reproducing images, maps, photos, and other non-textual items because these items can be helpful to our understanding of certain issues. However, when a party uses screen shots to reproduce textual items, such as transcript pages, that party must manually count and include the words reproduced in its word count because a commercial word processor will not count those words. *See* WIS. STAT. RULE 809.19(8)(d) (2017-18) ("For purposes of the certification and length requirements of this subsection, counsel may use the word count produced by a commercial word processor available to the general public."). We do not discern that Summit's brief exceeded the word count because of the screen shots, but parties that fail to count all words in a screen shot risk running afoul of appellate brief word count requirements. *See* RULE 809.19(8)(c) and (d).

Separately, we observe that both parties cite to the appendix and not to the record at various points in briefs filed in this court. This is a violation of an important rule. On appeal, a party must include appropriate factual references to the record in their briefing. WIS. STAT. RULE 809.19(1)(d)-(e). The appendix is not the record. *See **United Rentals, Inc. v. City of Madison**,* 2007 WI App 131, ¶1 n.2, 302 Wis. 2d 245, 733 N.W.2d 322. This is no minor matter. An appendix is a helpful tool when judges conduct an initial review of the briefs and, therefore, parties typically provide appendix cites, as the parties do here. But, when the case is assigned for drafting, we look directly to the record to verify factual assertions in a brief. The absence of record cites forces us to look to the appendix to determine where to look in the record. We warn counsel that future violations of the Rules of Appellate Procedure may result in sanctions. *See* WIS. STAT. RULE 809.83(2).

(continued)

¶3      Mancl had loans and accounts with Summit including, pertinent to this appeal, a mortgage loan, a credit card account, and an auto loan. For a time, payments toward the auto loan that Mancl had with Summit were made through automatic deductions from Mancl's wages at his place of employment. Summit stopped deducting from Mancl's wages and, instead, deducted from another person's wages.[2] Summit applied those amounts to Mancl's auto loan. In total, approximately $4,700 was erroneously applied to Mancl's auto loan.

¶4      Upon discovering its error, Summit reimbursed the other person. That had the effect of leaving Mancl $4,700 in arrears on his auto loan. Mancl met with a Summit employee to discuss repayment options and told the Summit employee that he was unable to repay the $4,700 arrears in a lump sum. Summit then proposed alternative repayment options to Mancl.

¶5      To repay the arrears on the auto loan, Mancl entered into a separate loan agreement with Summit at a zero percent interest rate. At Mancl's request, Summit agreed to reduce the arrears due on the auto loan (and the amount of the new loan) to approximately $4,200.[3] Mancl's monthly payment on the arrears

---

Further, in briefing in this court, Mancl refers to two opinions by title only and gives no citation to those opinions. This violates WIS. STAT. RULE 809.19(1)(e) ("The argument on each issue … is to contain … citations to the authorities … relied on as set forth in the Uniform System of Citation …."). Counsel for Mancl has violated this rule in this manner, to our knowledge, in at least one other appeal and may be subject to sanctions if this practice continues.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] That person has a name that differs from Mancl's only by a middle initial.

[3] For clarity, we will continue to refer to Mancl's original auto loan as the "auto loan," and we will now refer to Mancl's $4,200 subsequent loan for repayment of the auto loan arrears as the "arrears loan."

loan was approximately $85. The $85 payment on the arrears loan was in addition to the payment due each month on the auto loan. Mancl's auto loan was paid in full approximately six months after Mancl entered into the arrears loan. Starting at that point, only the $85 per month payment on the arrears loan was due from Mancl to Summit regarding the auto.

¶6 About a year after Mancl entered into the arrears loan, Mancl applied for a home equity consolidation loan with Summit because, according to Mancl, he was having trouble paying the combined total payments on the arrears loan, his credit card account with Summit, and a mortgage loan owed to Summit. However, Mancl's wife at the time refused to sign the required paperwork for the home equity consolidation loan and communicated to Summit that she did not want the loan to proceed. As a result, no home equity consolidation loan was entered into between Mancl and Summit. Mancl then became delinquent in his payments to Summit on his credit card account and other payments due to Summit.

¶7 Several months later, Mancl went to a Summit branch to make his mortgage loan payment at the drive-through lane. The teller asked Mancl to enter the branch. Mancl went inside and, ultimately, made his mortgage payment. In addition, in the branch, the teller told Mancl that his accounts at Summit, other than his mortgage loan, were suspended until he made payments on non-mortgage loans and credit card amounts which were due to Summit. After that conversation, Mancl continued to make his mortgage payments, and Summit accepted those payments.

¶8 Summit initiated this lawsuit against Mancl to collect the credit card debt owed by Mancl to Summit. Mancl filed five counterclaims alleging that

4

Summit violated provisions of the Wisconsin Consumer Act (WIS. STAT. chs. 421-427).

¶9      Summit filed an amended complaint which included additional allegations and attached credit card statements regarding Mancl's credit card account debt.

¶10      Summit moved for summary judgment on its claim for a money judgment against Mancl on the credit card debt and on Mancl's counterclaims. The circuit court granted summary judgment in favor of Summit on its claim against Mancl on the credit card debt and on three of Mancl's counterclaims. The circuit court withheld entry of the money judgment pending resolution of Mancl's two remaining counterclaims.

¶11      A jury trial was commenced on Mancl's two remaining counterclaims. At the close of Mancl's evidence, Summit moved for dismissal of the two remaining counterclaims on the ground of insufficiency of the evidence. *See* WIS. STAT. § 805.14(3). The circuit court granted Summit's motion, dismissed each remaining claim with prejudice, and entered the money judgment in favor of Summit against Mancl regarding the credit card debt.

¶12      Mancl appeals the circuit court's rulings disposing of his counterclaims.[4]

¶13      We refer to additional facts in the following discussion.

---

[4] Mancl does not appeal the circuit court's grant of summary judgment in favor of Summit on its claim for a money judgment on the credit card debt.

**DISCUSSION**

¶14    We begin with our review of the circuit court's grant of summary judgment in favor of Summit on three of Mancl's counterclaims. We then address the circuit court's dismissal at trial of Mancl's two remaining counterclaims.

## I.  The Circuit Court Properly Granted Summary Judgment in Favor of Summit.

¶15    Mancl argues that the circuit court erred by granting summary judgment in favor of Summit on three of Mancl's counterclaims. Those counterclaims alleged that Summit violated:  (1) WIS. STAT. § 427.104(1)(j), by filing a complaint that failed to comply with the pleading requirements in WIS. STAT. § 425.109; (2) § 427.104(1)(j), because Summit had no right to demand repayment of the $4,700 auto loan arrears in one payment; and (3) WIS. STAT. § 425.107, because Summit acted in an unconscionable manner toward Mancl. We conclude that the circuit court properly granted summary judgment in favor of Summit on these counterclaims.

### A.  Standard of Review and Summary Judgment Methodology.

¶16    This court reviews a grant of summary judgment de novo, using the same methodology employed by the circuit court. ***Bank of New York Mellon v. Klomsten***, 2018 WI App 25, ¶31, 381 Wis. 2d 218, 911 N.W.2d 364. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2); ***Bank of New York Mellon***, 381 Wis. 2d 218, ¶31.

¶17    When reviewing a summary judgment motion, we first determine whether the pleadings set forth a claim for relief. ***Helland v. Kurtis A. Froedtert***

*Mem'l Lutheran Hosp.*, 229 Wis. 2d 751, 756, 601 N.W.2d 318 (Ct. App. 1999). Next, we examine the moving party's submissions to determine whether those constitute a prima facie case for summary judgment. *Id.* If the submissions do, we examine the opposing party's submissions to determine "whether any disputed material fact exists, or whether any undisputed material facts are sufficient to allow for reasonable alternative inferences." *Id.*

¶18 We view summary judgment materials in the light most favorable to the non-moving party. *Affeldt v. Green Lake Cty.*, 2011 WI 56, ¶59, 335 Wis. 2d 104, 803 N.W.2d 56. However, the non-moving party "must set forth 'specific facts,' evidentiary in nature and admissible in form, showing that a genuine issue exists for trial." *Helland*, 229 Wis. 2d at 756.

### B. Pleading Defects Under WIS. STAT. ch. 425 Do Not Constitute Violations of WIS. STAT. § 427.104(1)(j).

¶19 WISCONSIN STAT. § 427.104(1)(j) prohibits a creditor, such as Summit, from "[c]laim[ing], or attempt[ing] or threaten[ing] to enforce a right with knowledge or reason to know that the right does not exist." Sec. 427.104(1)(j). To repeat, Mancl's first counterclaim is that Summit violated § 427.104(1)(j) by filing a complaint that allegedly failed to comply with the pleading requirements set forth in WIS. STAT. § 425.109(1)(d) (2013-14).[5]

---

[5] The parties agree that WIS. STAT. § 425.109(1)(d) (2013-14) applies to this case and, material to this appeal, requires that Summit's complaint contain "the actual or estimated amount of U.S. dollars … that the creditor alleges he or she is entitled to recover and the figures necessary for computation of the amount, including any amount received from the sale of any collateral."

(continued)

Mancl's specific contention is that Summit's original complaint violated § 427.104(1)(j) because it failed to include "the figures necessary for computation of the amount" that Summit alleged it was entitled to recover from Mancl. *See* § 425.109(1)(d) (2013-14).[6] We need not decide whether Summit's original complaint complied with § 425.109(1)(d) (2013-14) because a pleading defect, such as that alleged by Mancl, does not constitute a violation of § 427.104(1)(j).

¶20 The Wisconsin Supreme Court recently considered whether a creditor's failure to comply with the notice of default and right to cure provisions of WIS. STAT. ch. 425 constitutes a violation of WIS. STAT. § 427.104(1)(j). *See Security Fin. v. Kirsch*, 2019 WI 42, ¶¶18-19, 386 Wis. 2d 388, 926 N.W.2d 167. In *Kirsch*, the supreme court held that a "procedural deficiency," such as a creditor's failure to provide notice of default and right to cure in accordance with WIS. STAT. § 425.109, "does not fall under § 427.104." *Id.*, ¶19. The supreme court rejected the debtor's attempt to "shoehorn [the creditor's] failure to comply with ch. 425 into a [WIS. STAT.] ch. 427 violation in order to recover the significant remedies and penalties ch. 427 imposes." *Id.* The supreme court held that there is a "stark contrast" between the "[t]he sort of threatening and harassing conduct which violates [] § 427.104" and "procedural errors *such as pleading defects*," which "are treated much differently." *Id.* (emphasis added). The court

---

WISCONSIN STAT. § 425.109 (2013-14) was renumbered as WIS. STAT. § 425.109(1)(d)1. and amended by 2015 Wis. Act 155, § 4. The amended statute first applied to complaints filed on or after the effective date of the Act, which was July 1, 2016. *See* 2015 Wis. Act 155, §§ 12-13. Summit's original complaint and amended complaint were both filed prior to that effective date, and the parties concur that the amended statute does not apply to this case.

[6] Mancl conceded in the circuit court that Summit's amended complaint complied with the pleading requirements of WIS. STAT. § 425.109(1)(d) (2013-14), and Mancl does not contend on appeal that the amended complaint failed to comply with that statute.

further held that a creditor's failure to comply with a procedural requirement "did not disrupt [the creditor's] right to payment." *Id.*, ¶30. Therefore, "[w]hile [the debtor] was entitled to dismissal of [the creditor's] action [if a proper amended complaint was not filed] … [the debtor's] counterclaims fail[ed] to state a claim for additional relief under § 427.104(1)(j)." *Id.*

¶21     Mancl cites to *Kirsch* in his reply brief in this court and candidly acknowledges, "While [the supreme court did not rule] on the issue presented in Mancl's case, it seems likely that this Court will apply *Kirsch* to hold that [WIS. STAT. §] 427.104 does not allow Mancl to sue for a pleading defect, so Mancl's counsel will not belabor the point." Mancl is correct.

¶22     Like the defendant in *Kirsch*, Mancl seeks relief under WIS. STAT. § 427.104(1)(j) for an alleged failure to comply with a procedural requirement set forth in WIS. STAT. ch. 425 (2013-14). Our supreme court's holding and analysis in *Kirsch* foreclose any argument that a pleading defect "in and of itself" constitutes a violation of § 427.104(1)(j). *See id.*, ¶20. A pleading defect would have entitled Mancl only to dismissal of the original complaint, and not to any additional relief under § 427.104(1)(j). *See id.*, ¶30.

¶23     We conclude that *Kirsch* is controlling, and that this counterclaim fails to state a claim upon which relief can be granted. Accordingly, the counterclaim fails the first step in summary judgment methodology, and we affirm the circuit court's grant of summary judgment in favor of Summit on this counterclaim. *See Helland*, 229 Wis. 2d at 756.

## C. Summit Did Not Violate WIS. STAT. § 427.104(1)(j) in Negotiations About the Auto Loan Arrears.

¶24    Mancl's second counterclaim is that Summit violated WIS. STAT. § 427.104(1)(j) in the negotiations about Mancl's repayment of the auto loan arrears.  Mancl makes two separate contentions.  First, Mancl asserts that Summit violated § 427.104(1)(j) because Summit demanded payment of the $4,700 arrears in one installment and that demand breached a specific sentence in the auto loan agreement between Mancl and Summit.   Second, Mancl asserts that Summit violated § 427.104(1)(j) because it did not have the right to seek any repayment of the $4,700 arrears from Mancl.   We reject Mancl's assertions and affirm the circuit court's grant of summary judgment on this counterclaim.

### 1. Facts.

¶25    The following additional facts especially pertinent to this counterclaim are undisputed except where noted.

¶26    Upon discovering the error which led to Mancl being $4,700 in arrears on the auto loan, a Summit representative had multiple telephone conversations with Mancl regarding how repayment would be handled and also met with Mancl in person to discuss repayment.

¶27    The parties disagree about what was said in one of the initial conversations regarding repayment of the arrears.   According to Summit, a Summit employee told Mancl that he *could* make the $4,700 payment on the arrears in a lump sum.  In one sentence in Mancl's affidavit, he avers that Summit "told [Mancl] that [he] would have to pay the $4,000 plus I was behind in one

10

installment."[7]  Mancl argues that there is a material factual dispute arising from the difference between "could" and "would have to."

¶28     Continuing with the additional background, the parties agree that Mancl informed Summit that he was unable to repay the $4,700 in a lump sum payment.  As conceded by Mancl in briefing in this court, and as he testified in his deposition testimony, Summit then proposed the following arrears repayment options:  (1) refinancing and extending the auto loan term by fourteen months so that Mancl's monthly payment on the auto loan would remain the same; (2) refinancing the auto loan so it was fully paid within the current term of the loan (this would have the effect of increasing Mancl's monthly payment on the auto loan); or (3) entering into a separate loan for the $4,700 in arrears at a zero percent interest rate.

¶29     Mancl chose the third option.  In addition, Mancl asked Summit to reduce the arrears loan amount, and Summit agreed to reduce the amount owed to approximately $4,200.  The parties then entered into what we refer to as the "arrears loan."

### 2. Analysis.

¶30     As noted, Mancl contends that there is a factual dispute about whether Summit demanded that Mancl re-pay the $4,700 arrears in one

---

[7] We pause to note a discrepancy between the record as compared to Mancl's counterclaim and his argument.  As noted, Mancl's affidavit alleges that Summit told him that he would have to pay the arrears in "one installment."  But, Mancl's counterclaim and most of his argument in this court state that Summit told Mancl that he would have to pay the arrears "immediately."  The phrase "one installment" in Mancl's affidavit cannot be equated with a requirement of "immediate" payment.  We rely on the affidavit version.

installment, and Summit disagrees. We need not resolve that issue because this part of Mancl's counterclaim fails for other reasons.

¶31    Mancl argues that a creditor, such as Summit, violates WIS. STAT. § 427.104(1)(j) when it takes an action to collect a debt and that action breaches the creditor's contract with the debtor. *See **Kirk v. Credit Acceptance Corp.***, 2013 WI App 32, 346 Wis. 2d 635, 829 N.W.2d 522. Mancl relies on one sentence in a document in the record to support his claim that Summit had no contractual right to demand payment of the arrearage for the auto loan in one installment. That sentence reads: "You [Mancl] will be in default if you fail to make a payment when due two times during any 12 month period."[8] We conclude that: (1) Mancl has failed to show that the quoted sentence is contained in the auto loan agreement; and (2) the language relied on does not support Mancl's argument.

¶32    Pursuant to WIS. STAT. § 802.08(3), summary judgment materials must be "admissible in evidence." Mancl asserts that a document in the record which contains the sentence he relies on is the auto loan agreement between Mancl and Summit. In other words, Mancl asserts that that document is the authentic auto loan agreement. *See* WIS. STAT. § 909.01 ("The requirements of authentication or identification as a condition precedent to admissibility are satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."). For the following reasons, we conclude that Mancl

---

[8] Mancl's cite to the record in this court regarding this document is incorrect in two ways. First, Mancl cites to the wrong document in the record. But, we found the language Mancl relies on, quoted in the text, in the record. The purported contract was attached to a brief filed by Mancl in the circuit court (but without anything in the record authenticating the purported contract). Second, the page of the document cited by Mancl was incorrect. Nonetheless, we found the verbiage Mancl relies on within a different page in the document.

has failed to demonstrate that the document which contains the sentence he relies on is the authentic auto loan agreement between Mancl and Summit.

- Mancl cites to no affidavit that authenticates the document as the auto loan agreement;

- Mancl cites to no deposition testimony that authenticates the document as the auto loan agreement, and deposition testimony immediately preceding the document in the record makes no mention of the document;

- Nothing in the document references an auto loan or a specific vehicle and, as noted in the Background section of this opinion, Mancl had agreements with Summit other than the auto loan;

- A document identical to the purported auto loan agreement is attached to Summit's amended complaint, the amended complaint refers to that agreement as the contract between Mancl and Summit for Mancl's credit card account, and Mancl's answer to the amended complaint admits those facts.

¶33    Accordingly, we conclude that Mancl has failed to show that the language he relies on to support his argument is contained in the auto loan agreement between Mancl and Summit.  For that reason, the first part of this counterclaim of Mancl fails.

¶34    In addition, even if the language Mancl relies on is in the auto loan agreement, we would reject his argument.  We repeat the sentence Mancl cites: "You [Mancl] will be in default if you fail to make payment when due two times during any 12 month period."  After noting that language in briefing in this court,

Mancl fails to construct a discernable argument as to *why* that sentence leads to the conclusion that a purported attempt by Summit to demand payment of the arrears from Mancl in one installment is an attempt by Summit to enforce a right Summit knows does not exist in violation of WIS. STAT. § 427.104(1)(j). For that reason, we need not consider that argument further. *See* **State v. Pettit**, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (court of appeals may decline to review arguments that do not reflect any legal reasoning and are supported only by general statements).

¶35 We now consider the second part of Mancl's counterclaim. Specifically, Mancl alleges that the terms of the auto loan agreement between Summit and Mancl do not allow Summit to collect the auto loan arrears because the arrears accrued as a result of Summit's mistake. Mancl does not cite to any part of the record to support this proposition. Also, to the extent that Mancl is attempting to rely on terms in the document mentioned above, this argument fails because Mancl has failed to authenticate that document as the auto loan agreement.

¶36 In addition, Mancl concedes in briefing to us that "Summit had the right to expect Mancl to actually pay the amount he owed under the [auto loan] contract …." This concession effectively defeats Mancl's argument that Summit had no right to attempt to collect the arrears from Mancl. WISCONSIN STAT. § 427.104(1)(j) prohibits a creditor from "[c]laim[ing], or attempt[ing] or threaten[ing] to enforce a right with knowledge or reason to know *that the right does not exist*." Sec. 427.104(1)(j) (emphasis added). As Mancl concedes, Summit had an existing right to payment under the auto loan, and Summit's

discussions with Mancl concerning repayment options for the arrears were undisputedly directed at enforcing that existing right, as was the arrears loan.[9]

¶37 Therefore, we affirm the circuit court's grant of summary judgment in favor of Summit on this counterclaim.

### D. Mancl Has Not Shown That Summit's Actions Were Unconscionable.

¶38 Mancl's third counterclaim alleges that Summit "engaged in unconscionable behavior" in violation of WIS. STAT. § 425.107. Under § 425.107(1), a court may refuse to enforce a consumer credit transaction if it determines, as a matter of law, that any aspect of the transaction was unconscionable.[10] Mancl's specific argument is that the "sum total" of Summit's conduct toward Mancl in connection with the auto loan, the arrears loan, and the proposed debt consolidation loan was unconscionable. We conclude that Mancl has not shown that Summit's actions were unconscionable. Accordingly, we

---

[9] Mancl also asserts that Summit offered no reason why it did not offer other repayment options, such as delaying payments on the new loan until the remainder of the original loan was paid off, or forgiving the $4,700 entirely. But, Mancl does not explain how Summit's failure to offer these options violates WIS. STAT. § 427.104(1)(j). We will not construct an argument for Mancl, and we do not consider this assertion further. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

[10] WISCONSIN STAT. § 425.107(1) provides:

> With respect to a consumer credit transaction, if the court as a matter of law finds that any aspect of the transaction, any conduct directed against the customer by a party to the transaction, or any result of the transaction is unconscionable, the court shall, in addition to the remedy and penalty authorized in sub. (5), either refuse to enforce the transaction against the customer, or so limit the application of any unconscionable aspect or conduct to avoid any unconscionable result.

conclude the circuit court properly granted summary judgment in favor of Summit on this counterclaim.

### 1. Applicable Authorities.

¶39 Whether an aspect of a consumer credit transaction, or conduct related to the transaction, is unconscionable is a question of law that this court reviews de novo. *Wisconsin Auto Title Loans, Inc. v. Jones*, 2006 WI 53, ¶25, 290 Wis. 2d 514, 714 N.W.2d 155.

¶40 In *Wisconsin Auto Title Loans, Inc.*, the supreme court addressed whether a loan agreement was unconscionable under WIS. STAT. § 425.107. The supreme court stated that a determination of unconscionability requires proof that the challenged conduct or transaction is both procedurally and substantively unconscionable. *See id.*, ¶¶22, 33.

¶41 Procedural unconscionability concerns the formation of the contract. *Id.*, ¶34. A contract is procedurally unconscionable if factors bearing upon the formation of the contract show that the parties did not have a real and voluntary meeting of the minds. *See id.* Factors to be considered in evaluating procedural unconscionability include, but are not limited to, the following:

> age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms would have been permitted by the drafting party, and whether there were alternative providers of the subject matter of the contract.

*Id.* Substantive unconscionability concerns the fairness and reasonableness of the challenged transaction. *Id.*, ¶35.

¶42    The party asserting unconscionability bears the burden to show unconscionability. ***Coady v. Cross Ctry. Bank***, 2007 WI App 26, ¶39 n.10, 299 Wis. 2d 420, 729 N.W.2d 732.  Thus, it is Mancl's burden to show that Summit's conduct was both procedurally and substantively unconscionable. *See **Wisconsin Auto Title Loans***, 290 Wis. 2d 514, ¶33.

*2. Analysis.*

¶43    We now consider whether Mancl has made a showing that Summit's actions were procedurally unconscionable.

¶44    Mancl does not allege, in this court, that any actions or inactions of Summit were procedurally unconscionable.  Nonetheless, mindful of the factors relevant to procedural unconscionability mentioned in ***Wisconsin Auto Title Loans***, Mancl's briefing in this court may allude to two areas that could be construed as alleged instances of procedural unconscionability on the part of Summit.

¶45    Turning to the first of those two areas, Mancl asserts that Summit "did not explain the deal to [him]."  In support of this contention, Mancl cites only to language in an internal note that was made in Summit's records approximately one month after Mancl signed the arrears loan.  Below is the note in its entirety, apparently an attempt at a transcription of a voice mail from Mancl, with the language relied upon by Mancl italicized:

> From: [Mancl] … To:  [Summit employee] … Hello I seen your email and when we talked the first time i came in that lady you talked to on the phone *agreed to pay back just the loan amount minus interest*.  I heard her agree to that. Why

17

> is that changing? I already signed the paperwork for the loan. On what we agreed. I'm *confused* why she is changing her mind?

(Emphasis added.)

¶46 Mancl does not explain how or why the emphasized language is evidence that Summit did not explain the terms of the arrears loan to him. Indeed, by the time of that call from Mancl, the arrears loan was signed. Also, the arrears loan terms are consistent with Mancl's description of the loan in the voice mail. The only reasonable inference from this internal note is that the terms of the arrears loans were discussed and that Mancl signed the necessary paperwork for the arrears loan based on terms agreed upon by Mancl and Summit. To the extent that Mancl is asserting that the emphasized language shows that Mancl was confused about the terms of the arrears loan, Mancl does not explain why he was confused or how that alleged confusion is evidence that he and Summit did not have a real and voluntary meeting of the minds as to the terms of the arrears loan. Accordingly, we reject Mancl's assertions as a basis for procedural unconscionability.[11]

¶47 We now turn to the second of two areas alluded to in Mancl's brief. Mancl argues that it "is clear [from the summary judgment record] that [he] was not aware he had any options *other than* [to agree to enter into the arrears loan]." In support of this argument, Mancl points to his affidavit, in which he avers that he

---

[11] Mancl briefly asserts in the alternative that the language that we have italicized in the Summit internal note quoted above is evidence that "Summit changed the deal." However, Mancl once again does not explain why this is so, and he does not cite to any evidence that the arrears loan was, in fact, changed by Summit after Mancl signed the loan documents. Accordingly, we reject this argument as undeveloped. *See **Pettit***, 171 Wis. 2d at 646.

"did not believe [he] had any alternative but to agree to take out the [arrears loan]." This argument fails for multiple reasons.

¶48 Initially, Mancl's averment is disavowed by deposition testimony he gave after executing the affidavit. Mancl was asked during his deposition: "Do you claim that Summit told you that [the arrears loan] was a take-it-or-leave-it-type situation." Mancl answered that he "didn't know it was [a] take it or leave it" choice. That testimony directly contradicts Mancl's averment that he did not believe that he had an alternative to the arrears loan, and Mancl does not point to any evidence in the record in which his purported belief that his only option was to take out the arrears loan is put back into issue.

¶49 Mancl asserts that Summit could have offered him different alternatives to repayment of the arrears loan other than those payment options offered. As an example, Mancl contends that Summit could have offered him a zero-interest loan that would not go into repayment until after the auto loan was paid in full. However, Mancl does not point to any evidence in the record that he asked Summit for any option other than total forgiveness of the arrears amount. Mancl makes no cognizable argument that Summit's failure to give him, on its own accord, other options (or forgive a debt Mancl himself admits had to be repaid) is evidence of procedural unconscionability.

¶50 Because proof of unconscionability under WIS. STAT. § 425.107(1) requires proof of *both* procedural and substantive unconscionability, and Mancl has not pointed to any evidence from which it can reasonably be inferred that Summit's conduct was procedurally unconscionable, Mancl's counterclaim that Summit's conduct was unconscionable fails. Because our conclusion as to procedural unconscionability is dispositive, we do not address whether Mancl

19

made a showing that Summit's conduct was substantively unconscionable. *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (when a decision on one issue is dispositive, we need not reach other issues raised). Accordingly, we affirm the circuit court's grant of summary judgment in Summit's favor on this counterclaim.

## II.  Mancl's Remaining Counterclaims Were Properly Dismissed at the Close of Mancl's Evidence.

¶51     Mancl argues that the circuit court erred by dismissing for insufficient evidence, at the close of Mancl's evidence, Mancl's counterclaims that Summit violated:  (1) WIS. STAT. § 427.104(1)(j), by "initially refusing to accept [Mancl's] … mortgage payment"; and (2) WIS. STAT.  § 427.104(1)(e), by "discussing Mancl's alleged defaults in public."  We conclude that the circuit court properly dismissed these counterclaims.[12]

### A.  Standard of Review.

¶52     Dismissal of a counterclaim-plaintiff's cause of action based on insufficiency of the evidence is warranted if "considering all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain a finding in favor of such party."  WIS. STAT. § 805.14(1).  "Because a circuit court is better

---

[12] Mancl's arguments addressing his claim that the circuit court erred in dismissing his final two counterclaims at the close of his evidence are, in many important respects, not supported by citations to the record, as required WIS. STAT. RULE 809.19(1)(e).  For that reason, alone, we could reject Mancl's arguments.  *See Tam v. Luk*, 154 Wis. 2d 282, 291 n.5, 453 N.W.2d 158 (1990) (an appellate court need not consider arguments not supported by citation to the record indicating the location of documents or testimony relied upon).

positioned to decide the weight and relevancy of the testimony, an appellate court 'must [] give substantial deference to the [circuit] court's better ability to assess the evidence.'" *Weiss v. United Fire & Cas. Co.*, 197 Wis. 2d 365, 388-89, 541 N.W.2d 753 (1995) (quoted source omitted). "An appellate court should not overturn a circuit court's decision to dismiss for insufficient evidence unless the record reveals that the circuit court was 'clearly wrong.'" *Id.* at 389 (quoted source omitted). A circuit court is "clearly wrong" when it grants a motion to dismiss despite the existence of credible evidence to support the claim. *Id.*

### B. Mancl Failed to Show That Summit Violated WIS. STAT. § 427.104(1)(j).

¶53     Mancl asserts that he presented evidence at trial that: (1) Summit refused to accept his mortgage payment at the Summit drive-through until he entered the bank to discuss his accounts; and (2) a Summit representative then informed him that his services at Summit were suspended. Mancl contends that those statements by Summit should be interpreted as a threat that his subsequent mortgage payments would not be accepted by Summit. Mancl argues that these actions are prohibited by WIS. STAT. § 427.104(1)(j) and the circuit court erred in concluding otherwise.

¶54     We will assume, without deciding, that the facts Mancl relies on were adduced at trial, and that Mancl reasonably interpreted Summit's actions. However, Mancl fails to explain why Summit did not have the right to threaten not to accept his mortgage payments. In particular, Mancl does not identify any contractual provision or statute that prohibited Summit from doing what he claims Summit did. Without such authorities, there is no basis for this contention. Accordingly, we reject Mancl's argument as insufficiently developed and affirm the circuit court's dismissal of this counterclaim. *See Associates Fin. Servs. Co.*

*of Wis., Inc. v. Brown*, 2002 WI App 300, ¶4 n.3, 258 Wis. 2d 915, 656 N.W.2d 56 (this court does not consider conclusory assertions and undeveloped arguments).

### C. Mancl Failed to Show That Summit Disclosed or Threatened to Disclose Information in Violation of WIS. STAT. § 427.104(1)(e).

¶55 Mancl's final counterclaim alleged that Summit violated WIS. STAT. § 427.104(1)(e) by "discussing Mancl's alleged defaults in public." Section 427.104(1)(e) prohibits a creditor from "[d]isclos[ing] or threaten[ing] to disclose to a person other than the customer or the customer's spouse information affecting the customer's reputation … with knowledge or reason to know that the other person does not have a legitimate business need for the information." Sec. 427.104(1)(e). Mancl specifically argues that Summit violated § 427.104(1)(e) when a Summit employee discussed Mancl's accounts with him inside the Summit branch. We conclude that the record contains no evidence to support Mancl's counterclaim.

¶56 Mancl does not point to any evidence at trial that any other customer actually heard the Summit employee's discussion with Mancl. At trial, Mancl testified as follows. He "recall[ed] a guy standing at one of the other [teller stations]" when he entered the building. The other person "wasn't right next to [him]," but Mancl could not "remember how far away" the customer was standing. Mancl also testified, "I don't remember," when asked whether the other customer was at the counter the entire time Mancl was there. Mancl's testimony does not establish any basis to conclude that the other customer overheard the Summit employee's discussion with Mancl.

¶57     Mancl asserts that it is reasonable to infer from the evidence that "a customer only a short distance away at a bank counter might be able to overhear a conversation about another customer's finances." However, Mancl does not point to evidence that the customer was "only a short distance away."

¶58     Mancl argues that he is not required to prove that another person "actually heard the [information disclosed by the Summit employee]," because this "runs counter to the express statutory language" of WIS. STAT. § 427.104(1)(e). In support, Mancl cites only to *Rumpf v. Quorum Fed. Credit Union*, No. 17-CV-290-WMC, 2018 WL 6271597 (W.D. Wis. Nov. 30, 2018). Mancl does not explain how this potentially persuasive authority could support his argument. In *Rumpf*, the defendant allegedly violated § 427.104(1)(e) by including in a brief in a different proceeding that Rumpf had incurred debts while gambling. *Id.* at *2. Thus, we conclude *Rumpf* provides no support for Mancl's argument.

¶59     Mancl does not cite to any evidence in the record specifying *what* information was discussed by the Summit employee that may have been heard by another customer. Thus, Mancl fails to make a showing that he presented evidence that the teller disclosed information affecting Mancl's reputation. *See* WIS. STAT. § 427.104(1)(e).

¶60     Finally, in his reply brief, Mancl argues that "[t]alking loudly in the presence of other customers is conduct that threatens to disclose … information because other people *could* hear it." This argument fails for multiple reasons. Mancl raises the argument for the first time on appeal and we generally do not address arguments raised for the first time in a reply brief. *See Richman v. Security Savs. & Loan Ass'n*, 57 Wis. 2d 358, 361, 204 N.W.2d 511 (1973). In

addition, Mancl does not point to evidence in the record that the Summit teller he spoke with was speaking so loudly that other customers could hear what the teller was saying. *See* ***Tam v. Luk***, 154 Wis. 2d 282, 291 n.5, 453 N.W.2d 158 (1990) (this court need not consider arguments that are unsupported by adequate factual citations).

¶61     In sum, Mancl has failed to point to evidence in the record that Summit violated WIS. STAT. § 427.104(1)(e), and we affirm the circuit court's dismissal of that counterclaim.

## CONCLUSION

¶62     For the foregoing reasons, the judgment of the circuit court is affirmed.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.